**Steve D. Larson,** OSB No. 863540
Email: slarson@stollberne.com
**Joshua L. Ross**, OSB No. 034387
Email: jross@stollberne.com
STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. Oak Street, Fifth Floor
Portland, Oregon 97204
Telephone: (503) 227-1600
Facsimile: (503) 227-6840

**Diana E. Godwin**, OSB No. 761495
Email: DianaGodwin@earthlink.net
Law Offices of Diana E. Godwin
1500 NE Irving Street Suite 370
Portland, Oregon  97232
Telephone: (503) 224-0019
Facsimile: (503) 229-0614

**Attorneys for Plaintiffs**

[Additional Counsel Appear on Signature Page]

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| CHEHALEM PHYSICAL THERAPY, INC., and SOUTH WHIDBEY PHYSICAL THERAPY AND SPORTS CLINIC, | Case No.: 3:09-cv-00320-HU |
| Plaintiffs, | |
| v. | **MEMORANDUM IN SUPPORT OF PLAINTIFF'S RENEWED FED. R. CIV. PROC. 23(b)(2) MOTION FOR CLASS CERTIFICATION** |
| COVENTRY HEALTH CARE INC., | |
| Defendant. | |

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................1

II.     ARGUMENT ........................................................................................................2

        A.      The Proposed Injunctive Class Definition: ................................................2

        B.      Coventry's PPO Network Scheme: ..............................................................5

        C.      The Contractual Payment Provision Violated By Coventry: ...................7

        D.      The Court Should Grant Class Certification: ...........................................11

        E.      Plaintiffs Satisfy The Elements Of Certification Required By Rule
                23(A): ........................................................................................................12

                1.      The Class Is So Numerous that Joinder is Impracticable. .........12

                2.      There are Questions of Law or Fact Common to the Class .......12

                3.      Plaintiff's Claims are Typical of the Class. ..............................17

                4.      Plaintiff Will Fairly and Adequately Protect the Interests of the
                        Class .........................................................................................18

        F.      Plaintiff Satisfies The Elements Of Certification Required By Rule
                23(B)(2) .....................................................................................................22

III.    CONCLUSION ....................................................................................................25

# TABLE OF AUTHORITIES

## CASES

*Armstrong v. Davis*
275 F.3d 849 (9th Cir. 2001). ................................................................ 11, 17

*Capps v. U.S. Bank Nat. Ass'n*
2009 WL 5149135 (D. Or. 2009)................................................................ 18

*DG ex rel. Stricklin v. Devaughn*
594 F.3d 1188 (10th Cir. 2010) ........................................................... 23, 24

*Flecker v. Hollywood Entertainment Corp.*
(U.S.D.C. Or. 1997) ................................................................................... 21

*Gen. Tel. Co. of the NW., Inc. v. EEOC*
446 U.S. 318 (1980) ................................................................................... 12

*Gunderson v. F.A. Richard & Assoc., Inc.*
977 So.2d 1128, (La. App. 3d Cir. 2008) ................................................. 22

*Gunnells v. Healthplan Serv., Inc.*
348 F.3d 417 (4th Cir. 2003) .................................................................... 19

*Hanlon v. Chrysler Corp.*
150 F.3d 1011 (9th Cir. 1998) .................................................................. 17

*Hanon v. Dataproducts Corp.*
976 F.2d 497 (9th Cir. 1992) .................................................................... 17

*Harris v. Palm Springs Alpine Estates, Inc.*
329 F.2d 909 (9th Cir. 1964) .................................................................... 12

*In Re Assisted Living Concepts*
(U.S.D.C. Or., 99-167-AA)........................................................................ 21

*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*
691 F.2d 1335 (9th Cir. 1982) .................................................................. 11

*In Re Melridge Sec. Litig.*
(U.S.D.C. Or 1988) .................................................................................... 21

*Jordan v. County of Los Angeles*
 669 F.2d 1311 (9th Cir. 1982)
*vacated on other grounds* 459 U.S. 810 (1982)........................................ 12

*Lozano v. AT&T Wireless Svcs., Inc.*
504 F.3d 718 (9th Cir. 2007) .................................................................... 11

*Moeller v. Taco Bell Corp.*
220 F.R.D. 604 (N.D. Cal. 2004)
 *amended* (N.D. Cal. 2012) ................................................................................ 18

*Morelock Enterprises, Inc. v. Weyerhaeuser Co.*
CV 04-583-PA (D. Or. Dec. 16, 2004) ................................................................ 19

*Murray v. New Cingular Wireless Serv., Inc.*
232 F.R.D. 295 (N.D. Ill. 2005) ........................................................................... 19

*Oregon Laborers-Employers Health & Welfare Trust Fund v. Philip Morris, Inc.*
188 F.R.D. 365 (D. Or. 1998) ......................................................................... 12, 13

*Phelps v. 3PD, Inc.*
261 F.R.D. 548 (D. Or. 2009) ......................................................................... 13, 17

*Razilov v. Nationwide Mut. Ins. Co.*
No. 01-1466-BR (Nov. 13, 2005) .......................................................................... 21

*Reynolds v. Hartford*
No. 01 1529-BR (Sept. 11, 2006) .......................................................................... 21

*Rodriguez v. Hayes*
591 F.3d 1105 (9th Cir. 2009) .......................................................... 11, 12, 18, 22

*Stearns v. Ticketmaster Corp.*
655 F.3d 1013 (9th Cir. 2011) .............................................................................. 11

*Surowitz v. Hilton Hotels Corp. et al.*
383 U.S. 363 (1966) .............................................................................................. 19

*Wal-Mart Stores, Inc. v. Dukes*
__ U.S. __, 131 S.Ct. 2541 (2011) .................................................................. 11, 13

*Walters v. Reno*
145 F.3d 1032 (9th Cir. 1998) .............................................................................. 16

*Westways World Travel, Inc. v. AMR Corp.*
218 F.R.D. 223 (C.D. Cal. 2003) ......................................................................... 23

*Zinser v. Accufix Research Inst.*,
253 F.3d 1180 (9th Cir. 2001)
*amended* (9th Cir. 2001) ..................................................................................... 11

**RULES**

Fed. R. Civ. P. 23(a); ................................................................................... passim

I.     INTRODUCTION

The issue in this lawsuit is whether defendant materially violated and continues to violate the terms of its agreements with plaintiffs by miscalculating the amount of reimbursements owed and to be paid to plaintiffs for workers' compensation medical services.  Defendant breaches its agreements with class members in a specific circumstance: when the amount billed is less than the maximum amount payable under the applicable state workers' compensation fee schedule, rules, and guidelines, defendant applies a discount to the amount billed.  The contract prohibits defendant from discounting in that manner.

Throughout the course of this litigation, defendant has not denied that, in certain circumstances, its proprietary Managed Care Pricing System ("MCPS") applies the PPO discount to the billed charge, although defendant masks that number with the name "Workers' Comp Allowable."  This Court previously agreed with plaintiff Chehalem that applying the discount to the billed charge plainly violates the language of defendant's agreement.  Since then the Court has determined that, at the very least, the contract can reasonably be read to prohibit discounting off of the billed charge.  That specific circumstance, which constitutes a knowing and repeated violation of the contract and which defendant cannot deny it has done and continues to do, is the target of plaintiffs' lawsuit.

At trial, the jury will determine the meaning of the contractual provisions at issue and also determine whether, based on its interpretation of the contract, defendant has violated and will continue to violate the contract each time it applies a discount to the billed charge.  By this motion, plaintiff South Whidbey Physical Therapy and Sports Clinic ("South Whidbey") seeks to certify a class for purposes of prospective injunctive and declaratory relief.  South Whidbey does not seek a determination by the Court regarding the meaning of the contractual language or

Page 1 -    **MEMORANDUM IN SUPPORT OF PLAINTIFF'S RENEWED FRCP 23(b)(2) MOTION**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

defendant's liability for violating the contract; those questions are for the jury.  The question this motion raises is whether South Whidbey satisfies the elements set out in Fed. R. Civ. Proc. 23(a) and (b)(2).

For the reasons below, this Court should certify this class, send the case to the jury to interpret the contract and make a liability determination, put an end to defendant's disregard for what its contract demands, and silence defendant's repeated plea that this Court allow defendant to continue violating the terms of its agreement because, as it claims, it is incapable of correcting its self-enriching errors.

## II.    ARGUMENT

In this breach of contract case, plaintiffs allege that defendant has knowingly and improperly discounted providers' bills and continues to do so.  South Whidbey also alleges that defendant's breach is ongoing and will continue because its automated computer program, MCPS, routinely applies the contractual discount amount to the billed charge, and defendant will continue this practice unless and until a court orders otherwise.  Accordingly, injunctive and declaratory relief on a class-wide basis is the proper remedy.

### A.  The Proposed Injunctive Class Definition:

South Whidbey seeks injunctive and declaratory relief on its own behalf and on behalf of similarly situated providers.  By this Motion, South Whidbey seeks to certify a class of:

> all health care providers who have a First Health PPO Provider Agreement with a Workers' Compensation National Rate Code associated with Target Rate Codes PT3 and RB9.  Excluded from the class are physical therapists, physical therapy clinics, or health care providers in the state of Louisiana.

This proposed class definition differs from that advanced by South Whidbey in its prior motion (Docket 151).

Page 2 -    **MEMORANDUM IN SUPPORT OF PLAINTIFF'S RENEWED FRCP 23(b)(2) MOTION**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

South Whidbey proposes to limit the class only to those providers who have contracted with First Health and to whose contract defendant has assigned any National Rate Code ("NRC") associated with Target Rate Codes ("TRC") PT3 and RB9. Those are the TRCs defendant assigned to Chehalem (PT3) and South Whidbey's (RB9) contracts, and which will be assigned to other physical therapists. Sample Depo. (May 24, 2010) 64:10-65:10 (TRC is identified on lower right hand corner of Appendix A); Declaration of Joshua L. Ross in Support of Plaintiff's Renewed Motion for Class Certification ("Ross Dec") ¶¶ 2,3(attaching South Whidbey and Chehalem Provider Agreements).[1]

As the Court previously explained, and quoting defendant's prior filings, provider agreements begin as form contracts created by defendant. Opinion and Order (Docket 127) at 5. The rates contained in the Appendix A to a provider agreement are assigned a corresponding NRC, and the NRC is the rate that applies to the service the provider provides. *Id.* at 6. Defendant will assign the same NRC to a particular contract's rate if it is one that has been previously negotiated by a provider. If no previous matching NRC exists, defendant assigns the rate a new NRC. *Id.*

TRCs are "essentially the bundle of NRCs negotiated by the provider for the various classes of service" such as workers' compensation. *Id.* As with NRCs, defendant will determine whether the combination of NRCs negotiated in an agreement match an existing TRC and, if so, that existing TRC is assigned to the Appendix A in which the rates (which have been assigned NRCs) are set out. "For an existing TRC to be used, the match must exist for all products, state rules, and any other pricing rules associated with that TRC." *Id.* 6-7.

---

[1] Unless otherwise noted by reference to a prior filing, all references to documents in the record and/or cited deposition transcript excerpts are attached as exhibits to the Declaration of Joshua L. Ross in Support of Plaintiff's Renewed Motion for Class Certification.

Page 3 - **MEMORANDUM IN SUPPORT OF PLAINTIFF'S RENEWED FRCP 23(b)(2) MOTION**

Therefore, by limiting the proposed class definition to only those providers whose contracts were assigned the same TRCs as South Whidbey and Chehalem, the Court can be assured that the rates and operative language contained in every single Appendix A will be identical.  That is because when defendant offers a provider a template or form contract, and the provider accepts that contract with no changes, the TRCs "will use the [NRCs] for that grouping of products consistent with the template."  Declaration of Maureen Sample (Docket 86, page 8). In other words, defendant will assign a different TRC only when something is different between the contracts.  For example defendant would assign a different TRC to an Appendix A when less than all of the rates contained in the NRCs are the same.  Sample Declaration (Docket 86) at 8.

Further, defendant can identify all of the NRCs that make up TRCs RB9 and PT3. Sample Depo. (May 24, 2010) 144:5-8.  Defendant can also electronically run searches to identify all provider bills discounted pursuant to those NRCs.  Ross Dec ¶ 5.  By using TRCs to define the class, the Court will be sure that all of the class members will have the same form "lesser of" language in their contracts that has been the focus of the lawsuit; specifically, language providing for a discount for Workers' Compensation services of the lesser of 80% of the maximum amount payable under state or federal workers' compensation laws or regulations. Both South Whidbey's and Chehalem's contracts contain that language.[2]  *See* Sample Third Declaration (Docket 161) at 3-4.

---

[2] To be clear, and as addressed below, that different Appendices A may or may not contain *other* "lesser of" options for payment is of no consequence because this lawsuit, and the injunctive relief South Whidbey seeks, addresses only the circumstance in which a bill is discounted based on that specific "lesser of" the billed charge or 80% of the State Fee Schedule Maximum language.  As Ms. Sample discussed, provisions B, C, and D of South Whidbey's Appendix A will not apply to physical therapists.  Sample Dec (Docket 161) at 3.  In states with fee schedules, the "usual and customary" provision will not apply.  *Id*. at 3-4.  Regardless, even in those circumstances in which some other discounting provision is applied to a provider's bill by MCPS, those discounts would not be subject to the injunction.

Page 4 -    **MEMORANDUM IN SUPPORT OF PLAINTIFF'S RENEWED FRCP 23(b)(2) MOTION**

In addition, defining the class by reference to TRCs alleviates all concern regarding identification of class members.  Although individualized notice is not required for injunctive classes, and so the "ascertainability" issues that concerned the Court in regards to the damages class are not present here, limiting the injunctive class definition to certain TRCs will allow the Court to fashion and enforce an injunction because defendant unquestionably has the ability to electronically determine which provider bills were discounted using the NRCs that are within TRCs RB9 and PT3 without the need to locate and review paper contracts.[3]

### B.  Coventry's PPO Network Scheme:

Plaintiffs, Chehalem and South Whidbey are health care providers providing, among other things, heath care to individuals covered under workers' compensation insurance. Defendant owns and operates the First Health Preferred Provider Network.  Coventry enters into contracts with medical providers who become a part of a PPO Network such as First Health and agree to discount their services pursuant to their provider contracts.  Coventry then contracts with third party payors such as private health insurers, workers' compensation insurers, and third party administrators, to access this PPO Network.[4]  Coventry's contracts with payors allow these payors to apply the discount agreed to between Coventry and the provider.  In return, Coventry generally receives from the third party payor a percentage of the discount applied; the larger the discount to the payor, the larger the payment to Coventry.  Declaration of Diana E. Godwin in

---

[3] As the Court is aware, plaintiffs believe the jury will ultimately determine that the agreement is subject to one of three possible interpretations: (A) that the language prohibits defendant from applying the discount to the billed charge; (B) that the language allows defendant to do so; or (C) that the language is irreparably conflicting and ambiguous and not subject to reasonable interpretation.  In the event the jury finds that "Alternative C," plaintiff South Whidbey intends to ask the Court to craft an appropriate injunction that prohibits defendant from applying workers' compensation discounts.

[4]Chehalem is no longer a member of the First Health Network.

Page 5 -  **MEMORANDUM IN SUPPORT OF PLAINTIFF'S RENEWED FRCP 23(b)(2) MOTION**

Support of Plaintiffs' Renewed Motion for Class Certification and Motion for Summary Judgment ("Godwin Dec.") ¶¶ 10-11. Thus, Coventry is incentivized to make the discount as large as possible.

The process for discounting provider services works like this: after the medical provider provides a service to an insured, it sends a bill to the payor, generally the insurer or agent of the insurer. The payor reviews the bill either in house or by way of a third-party bill review vendor (such as Coventry's BR-4 system). The payor then sends certain bill information to Coventry's MCPS to determine whether the bill should be discounted prior to payment.[5] According to Coventry, MCPS then determines whether the provider is in the network and then "MCPS re-prices the claim in accordance with the payment terms of the PPO contract and returns the bill information to the insurer with the amount of the discount that can be taken under the provider agreement." *See* Defendant's Corrected Response in Opp. to Motion for Class Certification (Docket 91) at 5.

The payors do not have access to the discounts provided for in the contracts between providers and Coventry and must rely on Coventry's propriety MCPS platform to determine whether a discount should be applied and if so, what the correct discount should be. In other words, MCPS is essentially a calculator relied on by the providers to correctly calculate the discount payment of their services, and relied on by the payors to correctly calculate the discount the payor can apply. However, such reliance is misplaced because in certain circumstances defendant requires its payors to provide the wrong information to MCPS and, accordingly, defendant improperly applies the discount to the medical providers' bills.

---

[5] For consistency, this memorandum uses the terms payors throughout to mean both the payors and any bill review service or third-party administrator used by the payor to perform bill review functions, *i.e.,* bill review vendors.

Page 6 -  **MEMORANDUM IN SUPPORT OF PLAINTIFF'S RENEWED FRCP 23(b)(2) MOTION**

**C.    The Contractual Payment Provision Violated by Coventry:**

The Court has considered the contractual language at issue before.[6]  South Whidbey and

the putative class members have First Health network contracts requiring that, among other

options, for services rendered under workers' compensation the provider is paid the *lesser of*:

(1)    their billed charge or,
(2)    a percentage off the maximum amount payable under the applicable state
        workers' compensation fee schedule, rules, and guidelines ("State Fee Schedule
        Maximum").

*See* Goetz Depo. 28:3-11 and Ross Dec., Exh. A.

Specifically, Paragraph 4.2 of the South Whidbey Provider Agreement provides that:

(a) Pursuant to each Payor's Payor Agreement with First Health, Payor shall be
liable for the lesser of Provider's billed charges or the amount set forth in
Appendix A of this Agreement...

Appendix A to the Provider Agreement provides in relevant part that:

Reimbursement from Workers' Compensation Payors for services rendered to
occupationally ill/injured employees shall be the lesser of the amounts specified
in Sections A, B, C and D above *or 80% of the amount specified as the maximum
amount payable under any related state or federal law or regulation pertaining to
payments for such services* or the usual and customary fee for the services as
established by First Health or Payor.

Goetz Depo. 28:3-11 and Ross Dec., Exh. A (emphasis added).

Three steps are necessary for Coventry to comply with its contractual obligation. The first

step is determining two distinct pieces of information:

(1)    the billed charge; and
(2)    the State Fee Schedule Maximum (the amount specified as the maximum amount
        payable under any related state or federal law or regulation pertaining to payments
        for such services, and after accounting for any applicable rules or regulations).

---

[6]*See e.g.*, Findings and Recommendation (Docket 53); Opinion and Order (Docket 127).

Page 7 - **MEMORANDUM IN SUPPORT OF PLAINTIFF'S RENEWED FRCP 23(b)(2)
MOTION**

The second step is to apply the contractually agreed percentage discount to the State Fee Schedule Maximum and compare that discounted number with other provisions found in the Appendix to determine which is less.  DeLeers Depo. (July 22, 2011) 21:14-23.

In the third and final step, Coventry must compare the billed charge with the number determined above, whether it is the specified percentage of the State Fee Schedule Maximum or some other number from the Appendix.  *See id.*, *and see* Findings and Recommendation (Docket 53) at 6 (concluding that the provider agreement "specifically provides that the amount payable is the lesser of either the provider's billed charge or 80% of the state's fee schedule amount, as provided in Appendix A.  Nothing in the Provider Agreement or the Oregon administrative rules permits Coventry to discount the provider's billed charge.").

Although that is what the contract requires, defendant's automated process does not support that process for calculating the discount.  The payors provide the first piece of necessary information, the billed charge, to Coventry.

However, information regarding the second piece of necessary information, the State Fee Schedule Maximum, is not contained anywhere in the MCPS computer system.  DeLeers Depo. (March 22, 2010) 44:10-11, 59:13-15, 62:25-63:10.  MCPS does not have the State Fee Schedule Maximum because Coventry does not ask the payors for that information.  Instead, Coventry asks the payors to provide what Coventry calls the "Workers' Comp Allowable" ("WCA").  *Id.* at 59:13-22.  The WCA is calculated by the payors doing the bill review to be the lesser of the State Fee Schedule Maximum or the billed charge, where the State Fee Schedule Maximum is the amount allowed under a state's workers' compensation fee schedule, after application of all applicable state rules and guidelines.  *See* Lopez Depo. 64:10-21.  If the billed charge is less than the State Fee Schedule Maximum, the billed charge becomes the WCA.  *Id.*

Page 8 -  **MEMORANDUM IN SUPPORT OF PLAINTIFF'S RENEWED FRCP 23(b)(2) MOTION**

If, however, the State Fee Schedule Maximum is less than the billed charge, the State Fee Schedule Maximum becomes the WCA. *Id.* MCPS, as part of its calculation, applies the agreed-to percentage discount to the WCA whether or not the WCA is the billed charge or the State Fee Schedule Maximum. As noted above, applying the discount to the billed charge violates the provider agreement.

While defendant repeatedly takes issue with use of the term "State Fee Schedule Maximum," it is used here (as it has in prior filings) to mean the number allowed under a state's workers' compensation fee schedule, *after application of all applicable state rules and guidelines*. Defendant repeatedly distorts plaintiffs' arguments and allegations by suggesting that plaintiffs complain that when the billed charge is less than the amount listed in the applicable fee schedule—that is, the base number allowed under a state's fee schedule *before application of any applicable state rules and guidelines*—MCPS applies the discount to the billed charge.[7] That suggestion is inaccurate.

To be clear: Plaintiffs' allegation is that MCPS is incapable of discounting the appropriate amount in that situation, because it does not have the information it needs to compare the billed charge to 80% of the State Fee Schedule Maximum—the amount allowed under a state's fee schedule amount *after* the payor or bill review vendor applies any applicable rules or guidelines. When the billed charge is less than that number, defendant requires its payors to send the billed charge as the WCA. MCPS compares 80% of the WCA to the billed charge and recommends payment of the lesser of the two. That creates the absurd situation where the provider can never be paid its billed amount, no matter how low; MCPS calculates a payment

---

[7] *See* Docket 162 at 15 "Regardless of the term [plaintiffs] used, however, they meant the single amount specified for the service in the state's fee schedule, ignoring any applicable rules or guidelines that would provide for a different payable amount."

Page 9 - **MEMORANDUM IN SUPPORT OF PLAINTIFF'S RENEWED FRCP 23(b)(2) MOTION**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

that is the lesser of the provider's billed amount or 80% of the provider's billed amount. Plaintiffs allege the language of the contract prohibits defendant from applying the discount to the billed charge.

Defendant acknowledges that the information it receives as the WCA "includes the amount that the payor or its vendor has determined to be the amount payable under state regulations, rules, and guidelines." (Docket 162 at 5). The Court should reject defendant's attempt to confuse this issue. Again, pursuant to defendant's instructions, the payors transmit as the WCA whichever number is lower: the billed charge or the State Fee Schedule Maximum. The payors and third-party bill review vendors that transmit information to MCPS calculate the State Fee Schedule Maximum, and they also have the billed charge. Defendant simply fails to ask for those separate pieces of information so that MCPS can compare them.

Coventry could solve this problem by, for example, requesting the State Fee Schedule Maximum from the payors and comparing this information to the billed charge. Coventry could also program MCPS to accept—or require—that critical information, and to apply the discount to the proper number. The payors must have this information because one of the primary functions of bill review, as it relates to MCPS, is applying the state fee schedules and any applicable state rules to a provider's bills. To do that, bill review systems must be pre-loaded with state fee schedule information in order to function with MCPS as an automated system. Johnson Depo. (November 19, 2010) 10:5-11:4. However, even though this information is necessary for Coventry to comply with its obligations under the provider contract, it does not request this information. DeLeers Depo. (March 22, 2010) 116: 8-10.

Page 10 - **MEMORANDUM IN SUPPORT OF PLAINTIFF'S RENEWED FRCP 23(b)(2) MOTION**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

**D.      The Court Should Grant Class Certification:**

The decision to grant or deny class certification is within the discretion of the trial court. *Armstrong v. Davis*, 275 F.3d 849, 871 n.28 (9th Cir. 2001).  It is the plaintiff's burden to show compliance with the requirements of Rule 23.  *Lozano v. AT&T Wireless Svcs., Inc.*, 504 F.3d 718, 724 (9th Cir. 2007).  While the court should certify a class only after a rigorous analysis demonstrates that Rule 23 is satisfied, for purposes of ruling on a motion to certify a class, the court takes the substantive allegations of the complaint as true.  *Wal-Mart Stores, Inc. v. Dukes*, __ U.S. __, 131 S.Ct. 2541, 2552 (2011); *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 691 F.2d 1335, 1342 (9th Cir. 1982).

In order for a court to certify a class, "a plaintiff must satisfy each prerequisite of 23(a) of the Federal Rules of Civil Procedure and must also establish an appropriate ground for maintaining class actions under Rule 23(b)."  *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1019 (9th Cir. 2011).  The requirements of Rule 23(a) are: (1) a class so numerous that joinder is impractical (numerosity); (2) common questions of fact or law (commonality); (3) typicality of the representatives, (typicality); and (4) that the representatives will adequately represent the class (adequate representation).  *Id., citing* Fed. R. Civ. P. 23(a); *Wal-Mart*, 131 S.Ct. at 2548.

Certification under Rule (b)(2) requires that "the primary relief sought is declaratory or injunctive."  *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2009) *quoting Zinser v. Accufix Research Inst.*, 253 F.3d 1180, 1195 (9th Cir. 2001), *amended*, 273 F.3d 1266 (9th Cir. 2001).  The viability or bases of the claims for relief are not examined at this stage.  Rather the Court looks to "whether class members seek uniform relief from a practice applicable to all of them." *Id.*

Page 11 - **MEMORANDUM IN SUPPORT OF PLAINTIFF'S RENEWED FRCP 23(b)(2) MOTION**

**E.**    **Plaintiffs Satisfy the Elements of Certification Required by Rule 23(a):**

**1.**    **The Class Is So Numerous that Joinder is Impracticable.**

FRCP 23(a)(1) requires that "the class [be] so numerous that joinder of all members is impracticable."  Joinder becomes impracticable when potential class members would suffer a hardship or inconvenience if joinder were required.  *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964).  Although the size of a potential class is not dispositive, it is often a key factor in the numerosity analysis because "where a class is large in numbers, joinder will usually be impracticable."  *Jordan v. County of Los Angeles,* 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810 (1982).

The Supreme Court has held that FRCP 23 (a)(1) "imposes no absolute limitations" on the minimum number of parties necessary for bringing a class action suit.  *Gen. Tel. Co. of the NW., Inc. v. EEOC,* 446 U.S. 318, 330 (1980).  Courts generally find that the existence of at least forty class members satisfies the numerosity requirement.  *Oregon Laborers-Employers Health & Welfare Trust Fund v. Philip Morris, Inc.*, 188 F.R.D. 365, 372 (D. Or. 1998).

Here, this Court has already concluded that the class easily satisfies the numerosity requirement.  *See* Jan. 21, 2011 Opinion and Order at 17.  Furthermore, the size of the injunctive class is equally large in that it encompasses all currently-contracted providers, and joinder is impracticable here because the class members are located throughout the country.

**2.**    **There are Questions of Law or Fact Common to the Class**

FRCP 23(a) (2) requires that "there are questions of law or fact common to the class." This requirement is generally construed permissively, and "common" does not mean complete congruence.  *Rodriguez*, 591 F.3d at 1122.  Rather, a class need only share one significant legal issue or factual predicate in order to meet the commonality requirement.  *Phelps v. 3PD, Inc.*,

Page 12 - **MEMORANDUM IN SUPPORT OF PLAINTIFF'S RENEWED FRCP 23(b)(2) MOTION**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

261 F.R.D. 548, 555 (D. Or. 2009). Thus, "when the party opposing the class has engaged in some course of conduct that affects a group of persons and gives rise to a cause of action, one or more of the elements of that cause of action will be common to all of the persons affected." *Oregon Laborers-Employers Health & Welfare Trust Fund v. Philip Morris*, 188 F.R.D. 365, 373 (D. Or. 1998) (internal quotation omitted).

As the Supreme Court has explained, commonality requires the "plaintiff to demonstrate that the class members have suffered the same injury." *Dukes*, 131 S.Ct. at 2551 (internal quotations omitted). The plaintiffs' claims "must depend upon a common contention....[and] that common contention, moreover, must be of such a nature that it is capable of classwide resolution." *Id.*

Here there are common factual injuries. The injury complained of is the same: Coventry breaches the providers' contracts when it takes a percentage off the billed charge instead of comparing the billed charge with the State Fee Schedule Maximum to determine which is less. According to Coventry, the primary function of MCPS is simply to apply contracted rates. DeLeers Depo. (March 22, 2010) 127:19-22. But, MCPS cannot properly determine the contracted rate because Coventry doesn't "get the fee schedule....[it] only get[s] the work comp allowable. There's not a place to put it." *Id.*, 116:8-10. Without the State Fee Schedule Maximum, MCPS cannot compare the billed charge to 80% of the State Fee Schedule Maximum as the contract requires.

Here, there is a common contention and evidence that Coventry's MCPS computer system treats all members of the class in exactly the same improper manner when calculating payment rates because it is only supplied the WCA, not the information necessary to comply with its contract. Defendant's MCPS is an automated system; it could not function otherwise.

Page 13 - **MEMORANDUM IN SUPPORT OF PLAINTIFF'S RENEWED FRCP 23(b)(2) MOTION**

Anytime South Whidbey or a putative class member submits an invoice with a billed charge that is *less* than the State Fee Schedule Maximum, the payor or bill review system would identify the billed charge as the WCA and Coventry's MCPS systematically and improperly applies a percentage discount to the health care provider's invoice even in those instances where South Whidbey and the class members are entitled to a higher amount.  *See* DeLeers Depo. (March 22, 2010) 43:20-44:14; Lopez Depo. 43:25-46:25; Johnson Depo. (November 19, 2010) 15:11-16:12.; FAC ¶ 15.

Coventry may argue that it is not true that "each time" a class member submits a bill in an amount "less than the state fee schedule amount" defendant applied the discount to the billed charge.  (Docket 162 at 17-18).  To support that argument, as noted above, defendant must twist plaintiff's argument to suggest that plaintiff's definition of the phrase "State Fee Schedule Maximum" is "the single amount specified for the service in the state's fee schedule, ignoring any applicable rules or guidelines that would provide for a different payable amount." *Id*. at 15. It is true that the WCA a payor sends to MCPS will vary based on a particular state's rules and regulations and, sometimes, that number will be different from the base amount allowed under a fee schedule.  But, as described above and in prior briefing, plaintiff's claim assumes that the amount the payor transmits as the WCA is the result of *first* determining the State Fee Schedule Maximum (and *accounting for* state-specific rules and regulations) and comparing that number to the billed charge and if the billed charge is less, transmitting that amount as the WCA.

Thus, that different states may have different rules or regulations that apply to specific charges for different treatments simply does not affect class certification because the payor *sends a number to MCPS as the WCA*; as long as that number is determined by picking the lower of the billed charge and the State Fee Schedule Maximum, when the billed charge is less the discount

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

MCPS calculates will be calculated by comparing 80% of the billed charge to the billed charge. Johnson Depo. (Nov. 19, 2010) 16:3-12 (agreeing that Coventry's contracts with the payors define the WCA as "the lesser of the billed charge or the maximum payable under the State Rules and guidelines."); Lopez Depo. (June 22, 2010) 64:10-21; DeLeers Dep. (July 22, 2011) 21:14-23.

The Court should reject any argument that there will be individualized issues because, in some circumstances, the State Fee Schedule Maximum for purposes of the contract *is* the billed charge. That is the central question for the jury. The Court should not deny class certification because it may determine that, under a particular state law, the billed charge may or may not be the State Fee Schedule Maximum; instead, the jury will decide whether *defendant's contract* with providers allows it to treat a billed charge that is below the State Fee Schedule Maximum as the State Fee Schedule Maximum. (For all of the same logical reasons the Court rejected that argument at the initial Summary Judgment—among which, that it is illogical for the formula to require a comparison of 80% of the billed charge to the billed charge—plaintiffs believe the jury will conclude that defendant is in breach of the agreement.). [8]

Not only is there sufficient factual commonality to meet the commonality requirement, but there are also common legal issues. As described above, because plaintiff seeks to certify a class defined by TRCs, all class members' contracts will have the identical "lesser of" language that has been at issue in this case and the jury will be able to decide the meaning of that language. Further, Coventry has already sought judgment as a matter of law that discounting the

---

[8] What should occur is that Coventry should apply the percentage discount to the State Fee Schedule Maximum and then automatically compare the discounted State Fee Schedule Maximum to the other numbers in the appendix to determine the lowest number. Then, and consistent with its contractual obligations with the medical providers, it should compare the number from the appendix with the billed charge. But, it does not.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

billed charge is not a breach of the contract and lost.[9]  Thus, a common legal issue for every member of the class is whether, as a matter of law, Coventry's systematic practice of applying percentage discounts to the WC—whether or not the WCA is the billed charge or State Fee Schedule Maximum—breaches the contract.

Finally, there are common issues relating to whether, absent injunctive relief, Coventry's continued breach of its contractual obligations will cause irreparable harm to members of the injunctive class.  Thus, not only do South Whidbey's claims depend on a common contention, but its claims are also capable of classwide resolution in the form of an injunction compelling Coventry to comply with the terms of the contract.  Accordingly, because South Whidbey and the putative class members share more than one significant legal issue or factual predicate, this element is satisfied.

However, in an effort to claim individual inquiries where there are none, defendant has misstated South Whidbey's argument.  Further, even if individual inquiries were necessary, and they are not, all South Whidbey must do at this stage is show a common legal issue or factual predicate.  "Although common issues must predominate for class certification under Rule 23(b)(3), no such requirement exists under 23(b)(2)."  *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998).

Coventry's continued emphasis on individual issues ignores the fact that sufficient common factual and legal issues exist to satisfy this element.  In the final analysis, any variations among state rules and regulations for determining the State Fee Schedule Maximum are immaterial to this class certification because the complained of conduct is uniform, common, and typical because that is how defendant designed its automated system to function.

---

[9]*See* Findings and Recommendation (Docket 53); Order (Docket 58).

Page 16 -  **MEMORANDUM IN SUPPORT OF PLAINTIFF'S RENEWED FRCP 23(b)(2) MOTION**

### 3.    Plaintiff's Claims are Typical of the Class.

Fed. R.Civ. Proc. 23 (a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  The claims of the representative parties "are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998); *Phelps*, 261 F.R.D. at 557.  When assessing typicality, a court should look at "the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought."  *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992).  In cases where the challenged conduct involves a policy or practice that affects all class members, a court will find that typicality exists if proposed class members have injuries similar to those of the named plaintiffs and that "result from the same, injurious course of conduct."  *Armstrong v. Davis*, 275 F.3d 849, 868-69 (9th Cir. 2001).

South Whidbey entered into a First Health Network Participating Clinic Agreement in January 2007.  Goetz Depo. 28:3-11 and Ross Dec., Exh. A.  That agreement remains in effect today.  Goetz Depo. 31:2-9.  South Whidbey's breach of contract claim is identical to the breach of contract claims of the putative class members.  Because Coventry's MCPS system automatically applies a discount to the WCA without first determining whether the WCA is the billed charge or the Maximum State Fee Schedule, it has to be.

Defendant may argue that the claims are not typical because of potential defenses of waiver and ratification.  That argument is a red herring.  First, the Court has already determined that the contract is ambiguous and subject to more than one reasonable interpretation.  It is illogical, therefore, to suggest that plaintiffs could have waived or ratified certain conduct which *would not be permitted under that reasonable interpretation of the contract.*

Page 17 - **MEMORANDUM IN SUPPORT OF PLAINTIFF'S RENEWED FRCP 23(b)(2) MOTION**

Further, whether any class member has waived a cause of action for past damages is not relevant to future, prospective relief.  As this Court has already noted, "issues of waiver or accord and satisfaction...would not arise where the injunctive relief sought is prospective only." *See* Order on Motion for Leave (Docket 136) at 8-9.  Furthermore, "[d]efenses unique to a class representative counsel against class certification only where they threaten to become the focus of the litigation." *Rodriguez*, 591 F.3d at 1124 (*internal quotations omitted*).

Thus, not only does Coventry's challenged conduct involve a policy or practice that affects South Whidbey and class members, but the injuries, *i.e.*, underpayment, are also similar.  Additionally, prospective injunctive and corresponding declaratory relief sought by South Whidbey seeks to enjoin these actions on grounds generally applicable to the entirety of the class members.  Accordingly, this case satisfies the typicality prong of Rule 23(a)(3).

### 4.    Plaintiff Will Fairly and Adequately Protect the Interests of the Class

Fed. R. Civ. P. 23 (a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  The proposed class representatives must satisfy the following two factors in order to fulfill this requirement: (1) They may not have any conflicts of interest with the proposed class, and (2) they must be represented by qualified and competent counsel.  *See Capps v. U.S. Bank Nat. Ass'n*, 2009 WL 5149135 *5 (D. Or. 2009).  This case meets both prongs of the adequacy test of Rule 23(a)(4).

As explained by the court in *Moeller v. Taco Bell Corp.*, 220 F.R.D. 604, 611-12 (N.D. Cal. 2004), *amended*, 2012 WL 3070863 (N.D. Cal. 2012):

> The threshold of knowledge required to qualify a class representative is low; a party must be familiar with the basic elements of her claim, and will be deemed inadequate only if she is "startlingly unfamiliar" with the case.  It is not necessary that a representative be intimately familiar with every factual and legal issue in the case; rather, it is enough that the representative understand the gravamen of the claim.  Those courts that have found representatives inadequate have done so

Page 18 -  **MEMORANDUM IN SUPPORT OF PLAINTIFF'S RENEWED FRCP 23(b)(2) MOTION**

> because the plaintiffs knew nothing about the case and completely relied on
> counsel to direct the litigation. … Adoption of defendant's position would convert
> the class action into a device usable only by individuals with such a degree of
> sophistication that they would be capable of acting as their own attorneys.

(emphasis added) (internal citations and quotations omitted); *see also, Morelock Enterprises, Inc. v. Weyerhaeuser Co.*, CV 04-583-PA, 2004 WL 2997526, *4 (D. Or. Dec. 16, 2004) ("[t]he threshold of knowledge required of a Class Representative is not particularly high").[10]

Here, the claim of the proposed class representative is representative of the class claims. The proposed class representative shares the same interests as the class members because it seeks to have Coventry comply with its contractual obligations under the contract, contractual obligations that each member of the class would seek to have enforced. Plaintiff stands willing and able to zealously prosecute the litigation on behalf of the Class.

At deposition, Mr. Goetz, South Whidbey's owner and corporate representative, demonstrated a clear understanding of the facts underlying this case. Mr. Goetz testified that the claim was "to have [] our claim paid in accordance with the fee schedule" from First Health and that the claim was based on the fact that South Whidbey had not been "receiving the amount of

---

[10] *See also, Murray v. New Cingular Wireless Serv., Inc*., 232 F.R.D. 295, 300 (N.D. Ill. 2005) ("It is well established that a named plaintiff's lack of knowledge and understanding of the case is insufficient to deny class certification, *Surowitz v. Hilton Hotels Corp. et al.*, 383 U.S. 363, 86 S.Ct. 845, 15 L.Ed.2d 807 (1966), unless his ignorance unduly impacts his ability to vigorously prosecute the action … An understanding of the basic facts underlying the claims, some general knowledge, and a willingness and ability to participate in discovery are sufficient to meet this standard.") (internal citations and quotations omitted); *Gunnells v. Healthplan Serv., Inc*., 348 F.3d 417, 430 (4th Cir. 2003) ("It is hornbook law, as the district court recognized, that in a complex lawsuit, such as one in which the defendant's liability can be established only after a great deal of investigation and discovery by counsel against a background of legal knowledge, the representative need not have extensive knowledge of the facts of the case in order to be an adequate representative.") (internal citations and quotations omitted); *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 370-73 (1966) (reversing the dismissal of a class action where the named plaintiff, "knew nothing about the content of the suit" but did know the basic facts that she had purchased stock and was not getting her dividend).

Page 19 - **MEMORANDUM IN SUPPORT OF PLAINTIFF'S RENEWED FRCP 23(b)(2) MOTION**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

money" it was supposed to receive for the services it provided.  Goetz Depo. 81:23-82:7.  He also testified that South Whidbey was alleging that Defendant "didn't comply with its contract," and that South Whidbey was seeking to represent a class alleging that Coventry "similarly didn't comply with its contract with other members of the class."  Goetz Depo. 116:19-117:1.

Mr. Goetz testified that the relief the company sought in the lawsuit included:  (1) to "see that our claims get processed in the way that we expect them to get processed," and (2) "reimburse[ment] for treatments that have been improperly processed in the past."  Goetz Depo. 88:13-20.  Mr. Goetz also testified that he understood that he was seeking to represent a group of providers, and that the duties of a class representative included "hav[ing] some knowledge of the contract involved, [and] some knowledge of the case in general … ."  Goetz Depo. 83:3-5; 87:25-88:1.

Mr. Goetz has demonstrated his motivation to pursue the lawsuit by his preparation for and attendance at his deposition, and his intent, stated in his deposition, to attend trial in Portland if necessary (*Id*. at 88:10-12).  South Whidbey also produced several employees for deposition and responded to document requests (*see id*. at 60:21-61:2).  *See* Ross Dec ¶ 11 (attaching Declaration of Andrew Goetz in Support of Plaintiff's Reply to Defendant's Opposition to Motion for Class Certification, ¶ 3).  Mr. Goetz has further testified regarding South Whidbey's commitment to act as a class representative, to participate in the various stages of litigation, to assist Plaintiffs' counsel and to monitor the developments in the case through continued communication with counsel.  *Id.*  There exist no impermissible conflicts of interests between plaintiff and members of the class.

Furthermore, plaintiff's counsel include both experienced class action attorneys who have been appointed lead counsel in numerous class actions as well as counsel who are experts on

Page 20 -  **MEMORANDUM IN SUPPORT OF PLAINTIFF'S RENEWED FRCP 23(b)(2) MOTION**

worker's compensation payment law and procedures.[11]  Stoll Stoll Berne Lokting & Shlachter ("Stoll Berne") has been appointed lead counsel in numerous nationwide consumer and investor class actions.  *See* Declaration of Scott Shorr in Support of Motion for Class Certification (Docket 73).  This Court has previously appointed Stoll Berne lead counsel in the following complex consumer and investor class actions, among others: *Reynolds v. Hartford*, No. 01 1529-BR, Slip Op. (Sept. 11, 2006) (Steve Larson of Stoll Berne was lead counsel in a nationwide Fair Credit Reporting Act case, $85 million settlement in 2008); *Razilov v. Nationwide Mut. Ins. Co.*, No. 01-1466-BR, Slip Op. (Nov. 13, 2005) (Steve Larson of Stoll Berne was lead counsel in a nationwide Fair Credit Reporting Act case, $19 million settlement in 2007); *In Re Assisted Living Concepts,* (U.S.D.C. Or., 99-167-AA) (firm appointed lead counsel in nationwide securities fraud case, $43.5 million settlement); *Flecker v. Hollywood Entertainment Corp.,* (U.S.D.C. Or. 1997) (firm appointed co-lead counsel in nationwide securities fraud case, $15 million settlement); *In Re Melridge Sec. Litig.*, (U.S.D.C. Or 1988) (firm appointed co-lead and liaison counsel in nationwide securities fraud, $88 million verdict).  *Id.*

Co-counsel Cox, Cox, Filo, Camel and Wilson ("Cox Filo") and the Murray Law Firm in Louisiana also are preeminent class actions firms that have been appointed lead counsel in a large number of cases.  *See* Declaration of Thomas Filo in Support of Motion for Class Certification (Docket 77) (listing class action cases); *see* Declaration of Stephen Murray in Support of Motion for Class Certification (Docket 76) (listing class action cases).  Significantly, Cox Filo and the Murray Law Firm also have litigated a similar Louisiana state law claim arising out of the similar improper calculation of workers compensation PPO payments by Coventry's wholly owned and operated First Health network in a previously certified Louisiana state class

---

[11] This Court has already concluded in its prior decision that counsel is "highly qualified and competent."  Opinion and Order (Docket 127) at 18.

Page 21 - **MEMORANDUM IN SUPPORT OF PLAINTIFF'S RENEWED FRCP 23(b)(2) MOTION**

action.  *See Gunderson v. F.A. Richard & Assoc., Inc.,* 977 So.2d 1128, 1131 (La. App. 3d Cir.

2008) (listing counsel in certified class action).  Finally, both the Williams Family Law firm

from Louisiana and Diana Godwin from Portland, Oregon have significant experience in

substantive worker's compensation payment law that is critical to the underlying case.  *See*

Affidavit of Joe Payne Williams in Support of Motion for Class Certification (Docket 78);

Declaration of Diana Godwin in Support of Motion for Class Certification (Docket 74); *and*

Godwin Dec. ¶¶ 3-5.

> **F.     Plaintiff Satisfies the Elements of Certification Required by Rule 23(b)(2)**

When a plaintiff moves to certify a class under 23(b)(2), "it is sufficient to meet the

requirements of Rule 23(b)(2) that class members complain of a pattern or practice that is

generally applicable to the class as a whole." *Rodriguez*, 591 F.3d at 1125 (internal citations and

quotations omitted).  Further, "unlike actions brought under one of the other 23(b) prongs,

questions of manageability and judicial economy are... irrelevant to 23(b)(2) class actions." *Id.*

There "is no absolute right of opt-out in a rule 23(b)(2) class, even when monetary relief is

sought" and no individualized notice is necessary.  *See* Order on Motion for Leave (Docket 136)

at 9.  Finally, the "rule does not require [the Court] to examine the viability or bases of class

members' claims for declaratory and injunctive relief." *Rodriguez*, 591 F.3d at 1125.

Here, South Whidbey complains of a pattern or practice by Coventry that is generally

applicable to the class as whole.  The evidence demonstrates that the WCA is determined not by

MCPS but by the payors as "the lesser of [the] fee schedule or what the provider bills." Johnson

Depo. (November 19, 2010) 16:1-12; *see also* Lopez Depo. 64:10-21. This is the last step in the

bill review process before the WCA is sent to MCPS for discounting. Lopez Depo. 47:1-22. This

Page 22 - **MEMORANDUM IN SUPPORT OF PLAINTIFF'S RENEWED FRCP 23(b)(2)
             MOTION**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

pattern or practice results in the underpayment of bills that results in a continuing harm to South Whidbey and the members of the putative class.

 If South Whidbey is correct that the discounting of the billed charge is a breach of Coventry's contract then it is also a breach of the contracts of the class members whose billed charges are being discounted because Coventry does not compare the billed charge with the discounted State Fee Schedule Maximum to determine which is lower.  Courts have concluded that certification under Rule (b)(2) is appropriate in breach of contract cases.  *See, e.g., Westways World Travel, Inc. v. AMR Corp.*, 218 F.R.D. 223, 241 (C.D. Cal. 2003) (concluding that certification of a Rule b(2) class is appropriate for a breach of contract claim).

As described above, defendant acknowledges that its payor clients compare the billed charge to the State Fee Schedule Maximum; that the lower of those two numbers becomes the WCA; and that MCPS then applies the discount to the WCA.  It is this practice, "based on grounds generally applicable to all class members" that South Whidbey challenges.  *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1199 (10th Cir. 2010).

To establish the requisite "cohesiveness" of the injunctive class, plaintiffs must illustrate that the class is "sufficiently cohesive that any classwide injunctive relief satisfies Rule 65(d)'s requirement that every injunction state its terms specifically; and describe in reasonable detail * * * the act or acts restrained or required;" and that the "class members' injuries are 'sufficiently similar' that they can be remedied in a single injunction without differentiating between class members." *DG ex rel. Stricklin*, 594 F.3d at 1199-1200 (internal quotations omitted).

Here, South Whidbey seeks an injunction and corresponding declaratory relief that for South Whidbey and the members of the class, Coventry's practice of applying a percentage discount to the billed charge, as opposed to the State Fee Schedule Maximum, violates the

Page 23 **-** **MEMORANDUM IN SUPPORT OF PLAINTIFF'S RENEWED FRCP 23(b)(2) MOTION**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

contracts of South Whidbey and the class members.  Under Rule 23(b)(2), all that is required at the class certification stage is that the "plaintiffs describe in reasonably particular detail the injunctive relief they seek such that the district court can at least conceive of an injunction that would satisfy Rule 65(d)'s requirements, as well as the requirements of Rule 23(b)(2)." *DG ex rel. Stricklin*, 594 F.3d at 1200 (internal quotations and citations omitted).

Defendant may argue that no single injunction could take into account variations in the maximum amount payable under applicable regulations and the correct amount payable under provider agreements and thus individualized inquires are necessary.  But, as described above, the injunction and corresponding declaratory relief does not require the examination of the state-specific rules and regulations or any variations in state laws; instead, the core reason for defendant's violation is that its automated MCPS system does not have the capacity to perform the comparison that defendant's contracts with plaintiffs and members of the class require.

Likewise, variations in payment methodologies are immaterial.  As with the class definition, the injunction can be crafted to target only those providers with TRCs that include the subject "lesser of" language at issue in this case, and prospectively require that defendant figure out a way to stop its breach: for example, defendant could insert the proper number into the payment methodologies and the resulting number could then be compared to the billed charge to determine the lesser number as required by each and every contract of South Whidbey and the members of the class.  Ultimately, the manner in which defendant corrects its error is a responsibility it will have to take on in order to abide by the injunction.  The Court should not sanction the ongoing breach simply because defendant claims it is incapable of correcting the error it created.  Its BR4 system did not make this error when it was doing pricing.  The requirement of Rule (b)(2) is satisfied.

Page 24 - **MEMORANDUM IN SUPPORT OF PLAINTIFF'S RENEWED FRCP 23(b)(2) MOTION**

## III.    CONCLUSION

Because of Coventry's error, South Whidbey and hundreds of medical providers throughout the United States are systematically and routinely being underpaid in violation of their provider contracts with Coventry.  This practice should stop.  The only way this practice will stop is if this Court provides injunctive and corresponding declaratory relief to not only South Whidbey, but also to every provider that is a member of the proposed class.  As demonstrated above, the proposed class meets the requirement of class certification under Rule 23.  Accordingly, this Court should grant certification of the proposed class.

DATED this 2nd day of November, 2012.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.

By:/s/Joshua L. Ross_____
   **Steve D. Larson,** OSB No. 863540
   Email: slarson@stollberne.com
   **Joshua L. Ross**, OSB No. 034387
   Email: jross@stollberne.com
   209 S.W. Oak Street, Fifth Floor
   Portland, Oregon 97204
   Telephone: (503) 227-1600
   Facsimile: (503) 227-6840

   -AND-

   **Diana E. Godwin**, OSB No. 761495
   Email: DianaGodwin@earthlink.net
   Law Offices of Diana E. Godwin
   1500 NE Irving Street Suite 370
   Portland, Oregon  97232

   -AND-

   **Thomas A. Filo** (Admitted P*ro Hac Vice*)
   Email: tomfilo@yahoo.com
   Cox Cox Filo Camel & Wilson, LLC
   723 Broad Street
   Lake Charles, Louisiana 70601
   Telephone: (337) 436-6611
   Facsimile: (337) 436-9541

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

-AND-

**Stephen B. Murray** (Admitted *Pro Hac Vice*)
Email: smurray@murray-lawfirm.com
**Arthur M. Murray** (Admitted *Pro Hac Vice*)
Email: amurray@murray-lawfirm.com
**Korey A. Nelson** (Admitted *Pro Hac Vice*)
Email: knelson@murray-lawfirm.com
**Stephen B. Murray, Jr.** (Admitted *Pro Hac Vice*)
Email: smurrayjr@murray-lawfirm.com
Murray Law Firm
650 Poydras Street, Suite 1100
New Orleans, Louisiana 70130
Telephone: (504) 525-8100
Facsimile: (504) 584-5249

-AND-

**Joseph Payne Williams, Sr.** (Admitted P*ro Hac Vice*)
Email: jpwpw@cp-tel.net
**Richard Bray Williams** (Admitted P*ro Hac Vice*)
Email: bray@cp-tel.net
Williams Family Law Firm, LLC
162 Jefferson Street
Natchitoches, Louisiana 71457
Telephone: (318) 352-6695
Facsimile: (318) 352-6696

**Attorneys for Plaintiffs**

Page 26 - **MEMORANDUM IN SUPPORT OF PLAINTIFF'S RENEWED FRCP 23(b)(2) MOTION**

## LR 7-2(b) CERTIFICATION OF COMPLIANCE

I certify that this brief complies with the applicable word-count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains 7941 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of authorities, signature block, and any certificates of counsel.

DATED this 2nd day of November, 2012.

/s/Joshua L. Ross
Joshua L. Ross, OSB No. 034387
Email:  jross@stollberne.com

**Attorneys for Plaintiffs**

Page 27 - **MEMORANDUM IN SUPPORT OF PLAINTIFF'S RENEWED FRCP 23(b)(2) MOTION**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840