1              UNITED STATES DISTRICT COURT

2                    DISTRICT OF OREGON

3                    PORTLAND DIVISION

4

5   CHEHALEM PHYSICAL THERAPY, INC.)
    and SOUTH WHIDBEY PHYSICAL    )
6   THERAPY AND SPORTS CLINIC,    )        No. 09-cv-00320-HU
                                  )
7              Plaintiffs,        )
                                  )ORDER ON PLAINTIFF SOUTH WHIDBEY'S
8                                 )     MOTION TO CERTIFY CLASS
    COVENTRY HEALTH CARE, INC.,   )
9                                 )
               Defendant.         )
10

11

12  Arthur M. Murray
    Stephen B. Murray
13  Stephen B. Murray, Jr.
    Korey A. Nelson
14  MURRAY LAW FIRM
    650 Poydras Street, Suite 2150
15  New Orleans, LA 70130

16  Diana E. Godwin
    LAW OFFICE OF DIANA GODWIN
17  1500 N.E. Irving Street, Suite 370
    Portland, OR 97232
18

    Joseph Payne Williams, Sr.
19  Richard Bray Williams
    WILLIAMS FAMILY LAW FIRM, LLC
20  162 Jefferson Street
    Natchitoches, LA 71457    `
21

    Steve D. Larson
22  Joshua L. Ross
    STOLL STOLL BERNE LOKTING & SCHLACHTER, P.C.
23  209 S.W. Oak Street, Fifth Floor
    Portland, OR  97204
24

    Thomas A. Filo
25  COX COX FILO CAMEL & WILSON, LLC
    723 Broad Street
26  Lake Charles, LA 70601

27      Attorneys for Plaintiffs

28

    1  Order on Motion to Certify Class

1  John F. McGrory, Jr.
   DAVIS WRIGHT TREMAINE, LLP
2  1300 S.W. Fifth Avenue, Suite 2300
   Portland, OR 97201-5630
3
   Jennifer A. Adler
4  Lisa L. Heller
   V. Robert Denham, Jr.
5  ROBINS KAPLAN MILLER & CIRESI, LLP
   2600 One Atlanta Plaza
6  650 East Paces Ferry Road, N.E.
   Atlanta, GA 30326
7
        Attorneys for Defendant
8

9

10

11

12  HUBEL, Magistrate Judge:

13        This matter is before the court on motion of the plaintiff

14  South Whidbey Physical Therapy and Sports Clinic ("South Whidbey")

15  to certify an Injunctive Class under Federal Rule of Civil

16  Procedure 23(a) and (b)(2).  The motion is fully briefed, and the

17  court heard oral argument on the motion on January 8, 2013.

18        Preliminarily, I will set out the standards for class certifi-

19  cation, which provide the legal framework for consideration of the

20  parties' arguments.

21

22              **A.   *Class Action Standards***

23        For purposes of ruling on a motion to certify a class, the

24  court takes the substantive allegations of the Complaint as true,

25  but also considers the nature and range of proof necessary to

26  establish those allegations.  *In re Coordinated Pretrial Pro-*

27  *ceedings in Petroleum Prods. Antitrust Litig.*, 691 F.2d 1335, 1342

28  (9th Cir. 1982) (citing *Blackie v. Barrack*, 524 F.2d 891, 901 & n.7

1  (9th Cir. 1975)).   This analysis frequently "will entail some
2  overlap with the merits of the plaintiff's underlying claim.  That
3  cannot be helped."  *Wal-Mart Stores, Inc. v. Dukes*, ___ U.S. ___,
4  131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011).

5      As the party seeking class certification, South Whidbey bears
6  the burden of demonstrating compliance with each of the four
7  requirements of Federal Rule of Civil Procedure 23(a); i.e.,
8  numerosity, commonality, typicality, and adequacy of representa-
9  tion.  *See Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 725
10  (9th Cir. 2007); *see also* Dkt. #127, my order denying the
11  plaintiffs' motion to certify a Damages Class, at p. 13[1].   In
12  addition, South Whidbey must "establish an appropriate ground for
13  maintaining class actions under Rule 23(b)."  *Stearns v. Ticket-*
14  *master Corp.*, 655 F.3d 1013, 1019 (9th Cir. 2011); *Lozano*, *supra*.
15  The provision of Rule 23(b) applicable to South Whidbey's motion to
16  certify an Injunctive Class is subsection (2): "the party opposing
17  the class has acted or refused to act on grounds that apply
18  generally to the class, so that final injunctive relief or
19  corresponding declaratory relief is appropriate respecting the
20  class as a whole[.]"  Fed. R. Civ. P. 23(b)(2).

21      The commonality, typicality, and adequacy-of-representation
22  requirements "tend to merge" with one another in many respects,
23  with all of them serving "as guideposts for determining whether
24  under the particular circumstances maintenance of a class action is

25

26

27  [1]All page numbers cited in this order refer to the ECF
pagination at the top of the document, which sometimes differs from
28  the page number inserted by party filing the document.  *See, e.g.,*
Dkt. #197, where page 2 of the plaintiffs' brief falls on ECF p. 6.

3  Order on Motion to Certify Class

economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Dukes*, 131 S. Ct. at 2551 n.5; *see Comcast Corp. v. Behrend*, ___ S. Ct. ___, 2013 WL 1222646, at **4-5 (Mar. 27, 2013).   In order to justify a departure from the "usual rule that litigation is conducted by and on behalf of the individual named parties only, . . . 'a class representative must be part of the class and "possess the same interest and suffer the same injury" as the class members.'" *Dukes*, 131 S. Ct. at 2550 (quoting *East Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403, 97 S. Ct. 1891, 1896, 52 L. Ed. 2d 453 (1977), in turn quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216, 94 S. Ct. 2925, 2929, 41 L. Ed. 2d 706 (1974)).

Regarding the Rule 23(a) criteria, numerosity has never been at issue in this case. *See* Dkt. #127, pp. 16-17 & n.1.   However, the defendant Coventry Health Care, Inc. ("Coventry") argues South Whidbey cannot establish the criteria of commonality and typicali-ty, nor is South Whidbey a proper class representative.   In addition, Coventry argues South Whidbey's proposed class does not meet the implied prerequisite "that the class be adequately defined and readily ascertainable." *Sacora v. Thomas*, 2009 WL 4639635, at *11 (D. Or. Dec. 3, 2009) (Marsh, J.) (citing *Davis v. Astrue*, 250 F.R.D. 476, 484 (N.D. Cal. 2008); *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006); *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970)).

/ / /

/ / /

4  Order on Motion to Certify Class

### B.  Background Facts

The court and the parties are intimately familiar with the factual background of this case.  In a nutshell, this case concerns the proper interpretation of the reimbursement provisions of preferred provider organization (PPO) agreements between the plaintiffs and First Health Group Corp. ("First Health"), a Coventry subsidiary.  The plaintiffs contracted with First Health to participate in the First Health Provider Network - a PPO network maintained by First Health.  The plaintiff Chehalem Physical Therapy, Inc. ("Chehalem") entered into a First Health Network Participating Clinic Agreement ("Provider Agreement") in July 1998. It terminated its Provider Agreement prior to filing this lawsuit. South Whidbey entered into a similar Provider Agreement in January 2007, and its Provider Agreement remains in effect.

At issue in this case is whether Coventry has properly calculated the amount of reimbursements payable to the plaintiffs for workers' compensation medical services under the terms of the Provider Agreements.  The reimbursement provision of the Provider Agreement entered into by each of the plaintiffs provides, in pertinent part:

**§4.2  Reimbursement Procedure**

The rules and procedures for reimbursement under this Agreement are as follows:

(a)  Pursuant to each Payor's Payor Agreement with First Health, Payor shall be liable for the lesser of Provider's billed charges or the amount set forth in Appendix A of this Agreement, less amounts of any copayments, deductibles, and coordination of benefits, when Covered Medical Services are provided to a Participating Patient.

1          (b)   In no case shall reimbursement exceed
               Provider's billed charges.
2

3      Appendix A is different for each of the plaintiffs' Provider

4  Agreements.   South Whidbey's Appendix A provides, in pertinent

5  part, as follows:

6          A.   Services shall be reimbursed at **90% of
               the amounts specified in 2005 Medicare**
7              **Fee Schedules** as adjusted and supple-
               mented by First Health, except for those
8              services defined under Sections B or C
               below.  [Sections B and C specify par-
9              ticular rates for the provision of
               Anesthesia services and Durable Medical
10             Equipment.   Section D further specifies
               how these services are billed.]
11

12         E.   Reimbursement from Workers' Compensation
               Payors for services rendered to occupa-
13             tionally ill/injured employees shall be
               the lesser of the amounts specified in
14             Sections A, B, C and D above or **80%** of
               the amount specified as the maximum
15             amount payable under any related state or
               federal law or regulation pertaining to
16             payment for such services or the usual
               and customary fee for the services as
17             established by First Health or Payor.
               This rate of reimbursement shall apply
18             whether such rules or guidelines are in
               existence at the time of execution of
19             this agreement or established at a later
               time.

20              *   *   *

21         G.   In no case shall reimbursement exceed
               Provider's usual and customary charge for
22             the services rendered.

23  Dkt. #199-1, p. 16 (emphasis in original).

24      The plaintiffs claim that whenever a provider submits a bill

25  for workers' compensation medical services that is less than the

26  amount specified by the applicable state workers' compensation fee

27  schedule (after application of any applicable state rule or

28  guidelines), Coventry's MCPS system impermissibly recommends taking

6  Order on Motion to Certify Class

the applicable PPO discount off of the actual billed charge.  The plaintiffs claim this practice is a breach of their Provider Agreements.

### C.  South Whidbey's Motion to Certify Class

South Whidbey seeks to certify, and to act as class representative for, a class (referred to herein as the "Injunctive Class") consisting of:

> all health care providers who have a First Health PPO Provider Agreement with a Workers' Compensation National Rate Code associated with Target Rate Codes PT3 and RB9.  Excluded from the class are physical therapists, physical therapy clinics, or health care providers in the state of Louisiana.

Dkt. #196, p. 2.

In my order of January 2011, denying the plaintiffs' motion to certify a Damages Class, I described Coventry's procedure of assigning a National Rate Code ("NRC") to the services provided by the providers, and how the various NRCs negotiated by a provider are bundled into a Target Rate Code ("TRC").  *See* Dkt. #127, pp. 6-7.  South Whidbey states the TRC assigned to Chehalem's contract is PT3, and the TRC assigned to South Whidbey's contract is RB9.  South Whidbey explains, "[T]he NRC is the rate that applies to the service the provider provides. . . .  [Coventry] will assign the same NRC to a particular contract's rate if it is one that has been previously negotiated by a provider.  If no previous matching NRC exists, [Coventry] assigns the rate a new NRC."  Dkt. #197, p. 7.

South Whidbey goes on to explain that "TRCs are 'essentially the bundle of NRCs negotiated by the provider for the various classes of service' such as workers' compensation."  *Id.* (quoting

7  Order on Motion to Certify Class

1  the court's Order denying the plaintiffs' motion to certify a
2  Damages Class, Dkt. #127, at 6).  "As with NRCs, [Coventry] will
3  determine whether the combination of NRCs negotiated in an
4  agreement match an existing TRC and, if so, that existing TRC is
5  assigned to the Appendix A in which the rates (which have been
6  assigned NRCs) are set out.  'For an existing TRC to be used, the
7  match must exist for all products, state rules, and any other
8  pricing rules associated with that TRC.'"  *Id.* (quoting Dkt. #127,
9  at 6-7).

10      South Whidbey maintains that by limiting the Injunctive Class
11  to providers who have been assigned the same TRCs as the
12  plaintiffs, "the court can be assured that the rates and operative
13  language contained in every single Appendix A will be identical."
14  Dkt. #197, p. 8.  South Whidbey asserts this is true because when
15  Coventry "offers a provider a template or form contract, and the
16  provider accepts that contract with no changes, the TRCs 'will use
17  the [NRCs] for that grouping of products consistent with the
18  template.'"  *Id.* (quoting Decl. of Maureen Sample dated 08/10/10,
19  Dkt. #86, ¶ 17).

20      In addition, South Whidbey claims Coventry is able to identify
21  all of the NRCs that make up the two TRCs listed in the class
22  definition, as well as all of the provider's bills that were
23  discounted pursuant to those NRCs.  According to South Whidbey,
24  this will ensure that all class members "have the same form 'lesser
25  of' language in their contracts that has been the focus of the
26  lawsuit; specifically, language providing for a discount for
27  Workers' Compensation services of the lesser of 80% of the maximum
28

8  Order on Motion to Certify Class

1  amount payable under state or federal workers' compensation laws or
2  regulations." *Id.*

3       South Whidbey further claims it makes no difference if
4  Appendix A to various class members' contracts also contains other
5  "lesser of" payment options, because South Whidbey seeks injunctive
6  relief *only* for "the circumstance in which a bill is discounted
7  based on that specific 'lesser of' the billed charge or 80% of the
8  State Fee Schedule Maximum language." *Id.*, n.2. Other discounting
9  provisions that may be included in a class member's Appendix A
10 would not be subject to the injunction South Whidbey seeks in this
11 lawsuit. *Id.*

12      Moreover, South Whidbey asserts, defining the class by
13 referencing the two specific TRCs will allow the court to fashion
14 an appropriate injunction, and to enforce it, because, again
15 according to South Whidbey, Coventry is able to determine elec-
16 tronically "which provider bills were discounted using the NRCs
17 that are within TRCs RB9 and PT3 without the need to locate and
18 review paper contracts." Dkt. #17, p. 9.

19      Coventry takes issue with South Whidbey's claims regarding the
20 ease of identifying prospective class members. First, Coventry
21 notes the TRCs identified in South Whidbey's proposed class
22 definition are incomplete. According to Coventry, Chehalem's TRC
23 is ORPT3, not PT3, and South Whidbey's TRC is WARB9, not RB9.
24 Coventry represents that the TRCs RB9 and PT3 do not exist. Each
25 TRC is state-specific, with a state designator, "and a state's TRC
26 is unique to that state, in accordance with that state's rules and
27 regulations." Dkt. #204, p. 18. In addition to TRCs varying by

28

1  state, Coventry argues there also may be more than one version of
2  the TRC within each state.  *Id.*

3      Coventry argues further that even within a single state, "a
4  TRC cannot be used to accurately identify providers that have, or
5  had, identical NRCs." *Id.*, p. 19.  For example, Coventry indicates
6  an NRC within a TRC may change "either when a provider renegotiates
7  one of its rates, or adds or deletes a product, but the original
8  TRC designator assigned to that provider does not get changed in
9  Coventry's records." *Id.*, pp. 18-19.  Coventry maintains that
10 "TRCs are not reliable as a means to identify the reimbursement
11 rates of a provider." *Id.*, p. 18.

12     Coventry further argues variations in providers' contract
13 methodologies, state regulatory schemes, and payment regulations
14 for different categories of providers, all preclude a finding of
15 commonality and typicality between members of the proposed class.
16 According to Coventry, "South Whidbey's [Andrew] Goetz even
17 admitted that he could represent only physical therapy providers in
18 Washington state because of these variations." *Id.*, p. 20.
19 Coventry also maintains South Whidbey's proposed class lacks the
20 type of cohesiveness required to satisfy Rule 23(b)(2).  Coventry
21 notes the court previously found Chehalem's proposed Damages Class
22 "did not satisfy the predominance and superiority requirements of
23 Rule 23(b)(3)," and Coventry argues the same analysis applies to
24 show South Whidbey's class does not satisfy the requirements of
25 Rule 23(b)(2).  *Id.*, pp. 24-25.

26     Coventry also challenges South Whidbey's adequacy as class
27 representative.  Coventry argues Goetz's declaration, in which he
28 indicates he would pursue the class claims vigorously and assist

10  Order on Motion to Certify Class

1  class counsel in a meaningful way, contradicts his deposition
2  testimony.    Coventry argues it "has shown that Mr. Goetz is
3  'startlingly unfamiliar' based on his total lack of knowledge about
4  this case." *Id.*, pp. 21-22, n.9 (citing, *inter alia*, *Moeller v.*
5  *Taco Bell Corp.*, 220 F.R.D. 604, 611-12 (N.D. Cal. 2003), for the
6  proposition that "a plaintiff will be deemed inadequate if he or
7  she is 'startlingly unfamiliar' with the case'").

8      In addition, Coventry argues certification of a class under
9  Rule 23(b)(2) would be improper because a single injunction would
10 not provide relief to the proposed class members, due to their
11 disparate factual and legal circumstances.    Dkt. #204, pp. 25-30.
12 Coventry asserts this is borne out by the court's finding that the
13 contract language at issue is inherently ambiguous, and under
14 Illinois law, which controls here, the ambiguity cannot be resolved
15 absent the jury's consideration of extrinsic evidence of the
16 parties' intent.    Coventry argues this is an inherently indi-
17 vidualized consideration as to each provider, even those who simply
18 accepted a standard form contract without further negotiation.
19 Coventry maintains this individualized inquiry eliminates the
20 ability to try the issue on a class basis.    *Id.*

21     In reply, South Whidbey argues it is not necessary to list
22 every state designation in the class definition, such as ORPT3 for
23 the PT3 designation in Oregon, or WARB9 for the RB9 designation in
24 Washington, and doing so would be repetitive and unnecessary.
25 South Whidbey argues the implication in its proposed class defini-
26 tion "is that the state designation is automatically included in
27 those states where RB9 and PT3 are used." Dkt. #207, p. 11 (noting
28

11  Order on Motion to Certify Class

1  the proposed class definition specifically excludes providers in
2  Louisiana).

3     South Whidbey further claims Coventry's assertion that TRCs
4  are not a reliable means of identifying a provider's reimbursement
5  rates "almost defies response." *Id.*, p. 12.  South Whidbey agrees
6  that the workers' compensation fee schedules, rules, and guidelines
7  may differ from state to state, and the percentage discount applied
8  to various contracts between providers and Coventry also may
9  differ.  However, South Whidbey argues "the uniting factor among
10 providers with contracts with TRCs RB9 and PT3" is Coventry's
11 ongoing miscalculation of the "lesser of" reimbursement amount.

12    The court first addresses Coventry's reassertion at oral
13 argument that the new class definition fails to take into account
14 the court's decision that the contract at issue is ambiguous and
15 requires extrinsic evidence to determine the parties' intent, which
16 has to be an individualized determination.  As I noted in my order
17 denying the plaintiffs' motion to amend their Complaint, I never
18 held the jury will have to examine extrinsic evidence in order to
19 interpret the contract.  As I explained in that order, my holding
20 was based on the four corners of the Appendix A language.  I held,
21 "[T]he jury's task will be to resolve the ambiguity by construing
22 the contract 'in accordance with the ordinary expectations of
23 reasonable people.'"  Dkt. #186, p. 5 (quoting *Carey v. Richards*
24 *Bldg. Supply Co.*, 856 N.E.2d 24, 28 (Ill. App. Ct. 2006); citations
25 omitted).  I further noted, "The jury *may* examine parol evidence to
26 resolve the ambiguity in the language, and determine 'what a
27 reasonable person would take the agreement to mean.' . . .  The
28 contract  then  will  be  enforceable  pursuant  to  the  jury's

12  Order on Motion to Certify Class

1 interpretation." *Id.* (citations omitted; emphasis added). Thus,
2 Coventry's argument that class consideration fails due to such an
3 individualized inquiry is unavailing.

4     It also bears mentioning here that the extrinsic evidence the
5 parties can be expected to offer at trial likely will have little
6 impact on the jury's interpretation of the contract language in
7 question. It can be expected that South Whidbey representatives
8 (and representatives from any other class members who may testify)
9 will maintain they did not understand that their billed charge
10 could be discounted if the billed charge was less than the state
11 fee schedule maximum. Similarly, Coventry representatives can be
12 expected to testify that a common-sense reading of the Appendix A
13 language supports Coventry's reimbursement calculations. Faced
14 with this type of conflicting testimony, the jury will arrive back
15 at the contract language itself, which the jury must construe "in
16 accordance with the ordinary expectations of reasonable people."
17 *Carey*, 856 N.E.2d at 28.

18     Turning to South Whidbey's proposed class definition, the
19 court agrees it is not necessary to list every state designation.
20 However, the court further finds the RB9 and PT3 designations would
21 lack the necessary precision to define the class in any states
22 other than Oregon and Washington. For example, the TRC applicable
23 to South Whidbey's contract is WARB9. As Coventry's witnesses have
24 explained, the "RB" indicates there is a Medicare component in the
25 pricing formula, and this "RB" designation is the same in all
26 states. However, the number "9" used in connection with the WARB9
27 TRC indicates this is the ninth version of the contract with the
28 Medicare component for the state of Washington. The "RB" contract

13   Order on Motion to Certify Class

1  in another state (signifying that state's version of the contract
2  with a Medicare component) might only be the seventh version of
3  that contract (such as, hypothetically, "CARB7"), or that state may
4  be using the 200th version (e.g., "CARB200").  Thus, there may be
5  states that have another RB designation, yet still have providers
6  with contracts identical to South Whidbey's.  The only state within
7  which the RB9 designation is relevant for purposes of South
8  Whidbey's proposed class definition is Washington.  The same holds
9  true for the PT3 designation on Chehalem's contract, which would
10  apply only to physical therapists in the state of Oregon who have
11  the PT3 designation on their contracts.  Nevertheless, this problem
12  with South Whidbey's proposed class definition is not necessarily
13  fatal to South Whidbey's motion to certify an Injunctive Class.
14  The court is not bound by the class definition proposed, and may
15  modify the class definition to make it sufficiently definite.  *See,*
16  *e.g.*, *Robidoux v. Celani*, 98 F.2d 931, 937 (2d Cir. 1993); *Holman*
17  *v. Experian Info. Solutions, Inc.*, 2012 WL 1496203, at *8 (N.D.
18  Cal. Apr. 27, 2012) (quoting *In re Monumental Life Ins. Co.*, 365
19  F.3d 408, 414 (5th Cir. 2004)).

20      South Whidbey further argues it has met its burden to show
21  commonality at this stage of the lawsuit because it has shown the
22  existence of a common legal issue or factual predicate.  South
23  Whidbey asserts Coventry "is attempting to import the law on pre-
24  dominance, required in a [Rule 23(b)(3)] damages class, into the
25  commonality requirement of 23(a)."  *Id.*, p. 14 (citing *Walters v.*
26  *Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998)).

27      The class analysis in *Walters v. Reno*, the case cited by South
28  Whidbey, is instructive in the present case.  In *Walters*, aliens

14  Order on Motion to Certify Class

1  sued the federal Immigration and Naturalization Service ("INS," now
2  known as U.S. Citizenship and Immigration Services), alleging
3  certain administrative procedures employed by the agency violated
4  the aliens' constitutional right to procedural due process. Speci-
5  fically, the aliens challenged the form of notice of deportation
6  procedures the INS served on aliens charged with document fraud.
7  The aliens argued the notice forms were dense, written in complex
8  legal language, and failed to inform them adequately of the steps
9  required to contest the charges, including how to obtain a hearing,
10 and the consequences of failing to request a hearing. *Walters*, 145
11 F.3d at 1036.  The aliens moved for certification of "a class of
12 approximately 4,000 aliens who had been or were subject to final
13 orders." *Id.*  They sought an injunction and order "requiring the
14 INS to reopen each plaintiff's document fraud case and provide
15 hearings if necessary." *Id.*

16     The government challenged the district court's certification
17 of the class, arguing commonality was lacking because individual
18 class members' experiences were not sufficiently similar.  Among
19 other things, the government pointed to terms of the injunction
20 which provided the government with the opportunity to show an
21 individual class member had received adequate notice despite having
22 received the offending notice forms.  The government argued the
23 availability of such individualized proceedings demonstrated the
24 lack of commonality.

25     The court found the government had missed the point, holding
26 the district court properly presumed "that the INS actually
27 employed its constitutionally deficient policies and procedures."
28 *Id.*, 145 F.3d at 1045-46.  The court noted, "as the district court

15  Order on Motion to Certify Class

observed, it would be 'a twisted result' to permit an adminis-
trative agency to avoid nationwide litigation that challenges the
constitutionality of its general practices simply by pointing to
minor variations in procedure among branch offices and individual
INS agents, particularly because the variations were designed to
avoid the precise constitutional inadequacies identified by the
plaintiffs in this action." *Id.*, 145 F.3d at 1046.  The court also
observed:

> The government further argues that com-
> monality is nonexistent on account of factual
> distinctions in the class members' underlying
> claims.  Differences among the class members
> with respect to the merits of their actual
> document fraud cases, however, are simply
> insufficient to defeat the propriety of class
> certification.  What makes the plaintiffs'
> claims suitable for a class action is the
> common allegation that the INS's procedures
> provide insufficient notice.  *See Forbush v.*
> *J.C. Penney Co., Inc.*, 994 F.2d 1101, 1106
> (5th Cir. 1993) (noting that the need for
> subsequent individual proceedings, even com-
> plex ones, "does not supply a basis for con-
> cluding that [the named plaintiff] has not met
> the commonality requirement").

*Walters*, 145 F.3d at 1045-46.  *See  Rodriguez v.* Hayes, 591 F.3d
1105, 1122 (9th Cir. 2010) ("the commonality requirements ask[] us
to look only for some shared legal issue or a common core of
facts") (citing, *inter alia*, *Hanlon v. Chrysler Corp.*, 150 F.3d
1011, 1019 (9th Cir. 1998) (noting the Rule 23(a) commonality
requirement is construed "permissively" in the case of an injunc-
tive class, where "[t]he existence of shared legal issues with
divergent factual predicates is sufficient, as is a common core of
salient facts coupled with disparate legal remedies within the
class")).

16  Order on Motion to Certify Class

1    Specifically regarding certification of an injunctive class
2  pursuant to Rule 23(b)(2), the *Walters* court noted the plaintiffs
3  were challenging procedures used by the INS on a nationwide basis,
4  and the plaintiffs sought injunctive, rather than monetary, relief.
5  The government once again pointed to the individual proceedings
6  that would result from the injunction "as evidence that judicial
7  efficiency will actually be undermined by the class action." *Id.*,
8  145 F.3d at 1047.  The court noted "the district court's decision
9  eliminates the need for individual litigation regarding the
10 constitutionality of INS's official forms and procedures.  Absent
11 a class action decision, individual aliens across the country could
12 file complaints against the INS in federal court, each of them
13 raising precisely the same legal challenge to the constitutionality
14 of the . . . forms." *Id.*  Thus, the court held class certification
15 furthered Rule 23's general purpose of "avoiding duplicative
16 litigation." *Id.*

17    The *Walters* court further observed:

18         We note that with respect to 23(b)(2) in
           particular, the government's dogged focus on
19         the factual differences among the class
           members appears to demonstrate a fundamental
20         misunderstanding of the rule.  Although common
           issues must predominate for class certifi-
21         cation under Rule 23(b)(3), no such require-
           ment exists under 23(b)(2).  It is sufficient
22         if class members complain of a pattern or
           practice that is generally applicable to the
23         class as a whole.  Even if some class members
           have not been injured by the challenged
24         practice, a class may nevertheless be appro-
           priate.  *See* 7A Charles Alan Wright, Arthur R.
25         Miller & Mary Kay Kane, *Federal Practice &*
           *Procedure* § 1775 (2d ed. 1986) ("All the class
26         members need not be aggrieved by or desire to
           challenge the defendant's conduct in order for
27         some of them to seek relief under Rule
           23(b)(2)."); *see also Adamson v. Bowen*, 855
28         F.2d 668, 676 (10th Cir. 1988) (emphasizing

17  Order on Motion to Certify Class

that although "the claims of individual class members may differ factually," certification under Rule 23(b)(2) is a proper vehicle for challenging "a common policy").

*Id.*

A strikingly similar analysis is appropriate in the present case. Here, as in *Walters*, the putative members of the proposed Injunctive Class are challenging a widespread *procedure* that is "generally applicable to the class as a whole." *Walter*, 145 F.3d at 1047. As would have been the case in *Walters*, if individual aliens could file lawsuits challenging the same INS form, here, absent suit on a class basis, each individual provider with the same contract language could file a lawsuit challenging the identical procedure used by Coventry in calculating the appropriate reimbursement amount. These multiple lawsuits easily could lead to conflicting resolutions, despite the presence of identical factual and legal issues. Rule 23(b) "does not require us to examine the viability or bases of class members' claims for declaratory and injunctive relief, but only to look at whether class members seek uniform relief from a practice applicable to all of them." *Rodriguez*, 591 F.3d at 1125; *see Dukes*, 131 S. Ct. at 2551 ("'What matters to class certification . . . is not the raising of common "questions" - even in droves - but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.'") (quoting Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U.L. Rev. 97, 132 (2009)).

"A class is ascertainable if it identifies a group of unnamed plaintiffs by describing a set of common characteristics sufficient

18  Order on Motion to Certify Class

to allow a member of that group to identify himself or herself as having a right to recover based on the description. . . .  The identity of class members must be ascertainable by reference to objective criteria." *Vietnam Veterans of Am. v. C.I.A.*, 288 F.R.D. 192, 211 (N.D. Cal. 2012) (internal quotation marks, citations omitted).  The Tenth Circuit has noted that, in particular, a 23(b)(2) is well suited to cases where the composition of the class is not readily ascertainable.  Indeed, "while the lack of identifiability is a factor that may defeat Rule 23(b)(3) class certification, such is not the case with respect to class certification under Rule 23(b)(2)."  *Shook v. El Paso County*, 386 F.3d 963, 972 (10th Cir. 2004) (citing *Yagge v. Powers*, 454 F.2d 1362, 1366 (1st Cir. 1972) (holding actual class membership need not be "precisely delimited" because notice to the members of a 23(b)(2) class is not required); *see Walters*, 145 F.3d at 1047 (citing *Adamson v. Bowen*, 855 F.2d 668, 676 (10th cir. 1988) "(emphasizing that although 'the claims of individual class members may differ factually,' certification under rule 23(b)(2) is a proper vehicle for challenging 'a common policy')").

The court finds that with some minor changes, the previous Injunctive Class definition proposed by the plaintiffs more appropriately defines a group of providers with common characteristics that would allow members of that group to identify themselves as having a right to recover based on the description. The court therefore finds it is appropriate to certify the following Injunctive Class:

> All health care providers who have a First
> Health PPO Provider Agreement with a reim-
> bursement procedure providing for the payment

19  Order on Motion to Certify Class

1               of the lesser of (a) the billed charge, or (b) a discount based on a percentage of the maximum payable amount under the applicable state's workers' compensation fee schedule (after application of any applicable state rules or guidelines) (hereafter referred to as the "fee schedule maximum"), <u>and</u> who have had a deduction from the billed charge when that charge was less than the fee schedule maximum. Excluded from the class are health care providers in the state of Louisiana.

7 This class definition fits the parameters for an injunctive class

8 as discussed by the *Walters* Court. Members of the class will have

9 contracts specifying similar reimbursement guidelines. Each class

10 member will have had a discount taken from a billed charge when the

11 billed charge was less than the state fee schedule maximum. The

12 jury's decision as to whether such a discount is proper under the

13 contract language will control every instance when a provider

14 submits a billed charge that is less than the applicable fee

15 schedule maximum. If the jury finds Coventry's method of

16 calculating these reimbursements is flawed, an appropriate injunc-

17 tion will govern every such instance, without regard to other

18 factual differences that may exist between the providers and other

19 contract provisions. Proceeding on a class basis will eliminate

20 the need for individual litigation involving the same, or

21 substantially similar, factual and legal issues. In addition, just

22 as the government in *Walters* had the ability to show some aliens

23 actually received adequate notice despite the deficient procedures,

24 here, Coventry will have the ability to show (if, indeed, it can)

25 that some providers actually understood, and assented to, a

26 contractual interpretation that allowed a discount off their billed

27 charge when the billed charge was less than the fee schedule

28 maximum. "Differences among the class members with respect to the

20  Order on Motion to Certify Class

1  merits of their actual . . . cases, however, are simply
2  insufficient to defeat the propriety of class certification."
3  *Walters*, 145 F.3d at 1046.

4      The court is not wholly unsympathetic to the difficulties
5  Coventry may face in identifying providers who have contracts of
6  the type specified in the class definition, which will be required
7  if the jury agrees with the plaintiffs' interpretation of the
8  contract language.  However, it is notable that if Coventry is
9  found to have breached the contract as the plaintiffs claim, the
10 calculation errors constituting such a breach would be of
11 Coventry's own making, and not due, in any way, to any of the
12 providers' actions.  Coventry has constructed a labyrinthian system
13 to review providers' bills that has led to the very misunder-
14 standing, and conflicting interpretations, underlying this lawsuit.
15 If the jury finds Coventry's practices are breaching the Provider
16 Agreements, then as a practical matter, Coventry may have to change
17 its practices across the board to avoid the possibility of
18 violating the ensuing injunction.  If the jury finds Coventry has
19 breached the contract, the most appropriate type of injunction will
20 be broadly written to leave the method of compliance, and the
21 burden of complying, up to Coventry.  That discussion is left for
22 another day, after the jury has interpreted the contract language
23 at issue.[2]

24 _____

25     [2]Indeed, a discussion of how members of the class may be
   ascertained is not required at this stage of the case.  *Cf. Sykes*
26 *v. Mel Harris and Assocs., LLC*, 285 F.R.D. 279, 287 (S.D.N.Y. 2012
   ("Although the membership of the class must be ascertainable at
27 some point in the case, it does not necessarily have to be
   determined prior to class certification.") (internal quotation
28 marks, citations omitted); *Sorenson v. Concannon*, 893 F. Supp.

21  Order on Motion to Certify Class

1  Coventry further argues the plaintiffs have an adequate remedy
2  at law in the form of damages, making injunctive relief inappro-
3  priate.  In addition, the Provider Agreements, themselves, contain
4  a dispute resolution procedure.  Coventry asserts that if an
5  individual claim is compensable in damages, a party is not entitled
6  to an injunction, and the same should hold true on a class basis.
7  The court disagrees that there is an "adequate" remedy at law for
8  the challenged practice going forward.  The plaintiffs are seeking
9  an injunction to prevent future conduct that is allegedly
10 widespread, and allegedly will continue unabated absent an injunc-
11 tion.  Coventry would have each provider file suit, monthly or
12 annually if necessary, to vindicate ongoing erroneous calculations
13 of their reimbursement amounts.  As discussed above, maintaining
14 this action on a class basis will prevent innumerable lawsuits
15 challenging exactly the same contract interpretation, and the
16 attendant potential for inconsistent results.

17     As noted above, Coventry also challenges the adequacy of South
18 Whidbey as class representative, arguing Mr. Goetz is "startlingly
19 unfamiliar" with the case.  This argument is belied by the record
20 in this case.  Mr. Goetz has demonstrated an adequate understanding
21 of the facts underlying South Whidbey's claim, and has affirmed his
22 commitment to working with his counsel as class representative.
23 The plaintiffs' attorneys are well qualified, and South Whidbey's
24 interests are not antagonistic to the interests of the class as a
25 whole.  Particularly in light of the low threshold of knowledge
26 required for a class representative, *see, e.g., Morelock Enters.,*

27 _____
28 1469, 1479-80 (D. Or. 1994) (Jones, J.) (noting actual class
   members often are not known until the final claims process).

22  Order on Motion to Certify Class

1  *Inc. v. Weyerhaeuser Co.*, 2004 WL 2997526, at *4 (D. Or. Dec. 16,

2  2004) (Panner, J.) ("The threshold of knowledge required of a Class

3  Representative is not particularly high."); *Moeller v. Taco Bell*

4  *Corp.*, 220 F.R.D. 604, 611-12 (N.D. Cal. 2004) ("The threshold of

5  knowledge required to qualify a class representative is low[.]"),

6  the court finds South Whidbey is an adequate representative of the

7  proposed Injunctive Class.

8      For these reasons, South Whidbey's motion (Dkt. #196) for

9  certification of an Injunctive Class is **granted.**   An Injunctive

10  Class is hereby certified, defined as follows:

> All health care providers who have a First
> Health PPO Provider Agreement with a reim-
> bursement procedure providing for the payment
> of the lesser of (a) the billed charge, or (b)
> a discount based on a percentage of the maxi-
> mum payable amount under the applicable
> state's workers' compensation fee schedule
> (after application of any applicable state
> rules or guidelines) (hereafter referred to as
> the "fee schedule maximum"), <u>and</u> who have had
> a deduction from the billed charge when that
> charge was less than the fee schedule maximum.
> Excluded from the class are health care pro-
> viders in the state of Louisiana.

    IT IS SO ORDERED.

                            Dated this 16th day of April, 2013.

                            /s/ Dennis J. Hubel

                            _____
                            Dennis James Hubel
                            Unites States Magistrate Judge

23  Order on Motion to Certify Class