## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Settlement Agreement") is made on this 7th day of March, 2014 by and between plaintiffs Chehalem Physical Therapy, Inc. ("Chehalem"), and South Whidbey Physical Therapy and Sports Clinic ("South Whidbey"), individually and on behalf of the Settlement Class described below, (collectively the "Plaintiffs") represented by their counsel of record (collectively "Plaintiffs' Counsel") and defendant Coventry Health Care, Inc. ("Coventry") represented by its counsel of record (collectively "Defense Counsel"), subject to the approval of the court as provided below.

## RECITALS:

WHEREAS, Chehalem is a health care provider located in Oregon and was a participating provider in the First Health PPO Network through a Participating Clinic Agreement from July 1998 through May 2008; and South Whidbey is a health care provider located in Washington and has been a participating provider in the First Health PPO Network since January 2007; and

WHEREAS, Chehalem filed a putative class action lawsuit against Coventry in the District of Oregon in March 2009, alleging that Coventry incorrectly calculated the reimbursement due to it for certain workers' compensation medical bills, in breach of the terms of its PPO Provider Agreement, styled *Chehalem Physical Therapy, Inc. v. Coventry Health Care, Inc.*, Case No. 3:09-CV-320-HU (the "Litigation"); and

WHEREAS, on January 21, 2011, the Court denied Chehalem's Motion to certify a nationwide class pursuing claims for damages, and;

WHEREAS, the Court found that Chehalem is an inadequate representative for any class seeking prospective injunctive relief because its Provider Agreement was terminated in May 2008; and

WHEREAS, South Whidbey was added to the Litigation in May 2011 as an individual plaintiff and on behalf of a putative class pursuing claims for prospective injunctive relief; and

WHEREAS, the Court certified a class of providers in April 2013, but only for purposes of claims for prospective injunctive relief; and

WHEREAS, the Plaintiffs and Coventry entered into a mediation of their disputes on July 18, 2013, with the Honorable Edward A. Infante as mediator; and

WHEREAS, Mediator Infante presented a Mediator's Proposal to the Plaintiffs and Coventry on October 31, 2013; and

WHEREAS, the Plaintiffs accepted the Mediator's Proposal on November 4, 2013; and

WHEREAS, Coventry accepted the Mediator's Proposal, subject to certain clarifications or interpretations, on November 4, 2013; and

WHEREAS, the Plaintiffs agreed to Coventry's clarifications or interpretations of the Mediator's Proposal; and

WHEREAS, Mediator Infante presented a Mediator's Proposal regarding attorneys' fees and expenses to the Plaintiffs and Coventry on November 15, 2013; and

2

WHEREAS, the Plaintiffs and Coventry accepted the Mediator's Proposal regarding attorneys' fees and expenses on November 22, 2013; and

WHEREAS, the parties entered into a Memorandum of Understanding regarding the terms of their Settlement on January 10, 2014; and

WHEREAS, the Parties recognize the uncertainty and the risk of the outcome of any litigation, especially complex litigation such as this, and the difficulties and risks inherent in the trial of such an action. Further, the Parties believe that the terms herein will provide substantial benefits to the members of the Settlement Class, and believe the settlement to be fair, reasonable and in the best interests of members of the Settlement Class; and

WHEREAS, Coventry, while continuing to deny all allegations of wrongdoing or liability whatsoever, but bearing in mind the potential disruption and costs associated with continued litigation, desires to settle and terminate all claims against it, without in any way acknowledging fault or liability. Coventry further desires to settle and terminate the claims against it to avoid further lengthy and time-consuming litigation and the burden, inconvenience, risk and expense connected therewith, and to put to rest forever all claims released by Plaintiffs and members of the Settlement Class, pursuant to this Settlement Agreement.

NOW, THEREFORE, in consideration of the mutual releases and other promises, obligations, agreements and covenants made hereunder and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged,

3

the Parties agree, subject to Court approval pursuant to Federal Rule of Civil Procedure

23, as follows:

## SETTLEMENT TERMS

1.    **Definitions.**

- "The Litigation" shall be the case *Chehalem Physical Therapy, Inc. v. Coventry Health Care, Inc.*, Case No. 3:09-CV-320-HU.

- "EORs" are Explanations of Review.

- "WCA" is Workers' Compensation Allowable.

- "The Notice" is the Notice of the settlement to be mailed to the Settlement Class Members.

- "The Settlement Class" is all health care providers who have or have had a First Health provider agreement, whose provider agreements have an Appendix A that has the term "maximum amount payable" in the reimbursement provision for reimbursement for services rendered to occupationally ill or injured employees, and who have had bills discounted pursuant to the First Health provider agreement during the class period, March 25, 1999 through the present, by discounting the billed charge when the billed charge was less than the applicable state or federal fee schedule amount.

- "Notified Class Members" will be all providers who receive the Notice.

- "Self-identified Class Members" will be providers who submit documentation demonstrating that they are Self-identified Class members in accordance with the requirements specified below.

- "Actual Damages Class Members" will be providers who submit individual claims in accordance with the requirements specified below that are approved by the Claims Administrator.

- "Claim Submission Period" will be the one hundred twenty (120) day period Notified Class Members will have from the date of mailing the Base Guaranteed Payment to submit documentation demonstrating that they are Self-identified Class Members and/or submitting individual claims to be considered Actual Damages Class Members.

4

- The "Guaranteed Fund" is a fund Coventry will establish in the amount of $5,000,000.00 to pay Notified Class Members and Self-identified Class Members.

- The "Base Guaranteed Payment" is the $50 every Notified Class Member will receive from the Guaranteed Fund.

- The "Additional Guaranteed Payment" is the pro rate share of the remaining portion of the Guaranteed Fund (after the payment of the Base Guaranteed Payment) that will be distributed to the Self-identified Class Members.

- The "Claims Administrator" will be a class action settlement administrator engaged by Coventry to mail class Notices, mail the Base Guaranteed Payment to Notified Class Members, process documentation submitted by Self-identified Class Members, mail the Additional Guaranteed Payment to them, and handle the claims of Actual Damages Class Members and mail checks to them.

- The "Individual Claim Fund" is the Maximum Claims Amount of $3,500,000 Coventry will pay to Actual Damages Class Members.

- The "Effective Date" is the date the Final Judgment and Order shall be deemed final and effective, which is the date that the Court has granted final approval of the settlement and any properly filed objections have been resolved in favor of the settlement, and any appeals have been fully adjudicated in favor of the settlement approved by the Court or the time within which the settlement approved by the Court could be appealed has expired with no appeal having been filed.

**2.    Class Certification.**

For purposes of this settlement only, the Parties stipulate to the conditional certification of a Settlement Class under Rule 23(b)(3) of the Federal Rules of Civil Procedure which shall consist of:

> All health care providers who have or have had a First Health provider agreement, whose provider agreements have an Appendix A that has the term "maximum amount payable" in the reimbursement provision for reimbursement for services rendered to occupationally ill or injured employees, and who have had bills discounted pursuant to

5

> the First Health provider agreement during the class period, March 25, 1999 through the present, by discounting the billed charge when the billed charge was less than the applicable state or federal fee schedule amount.

**3.      Vacating Settlement Certification**.

The certification of the Settlement Class shall be binding only with respect to the settlement of the Litigation.  In the event that the Settlement Agreement is terminated pursuant to its terms or is not approved in all material respects by the Court or is reversed, vacated, or modified in any material respect by the Court or any other court, the certification of the Settlement Class shall be deemed vacated, the Litigation shall proceed as though the Settlement Class had never been certified, and no reference to the prior Settlement Class, or the settlement, or any documents related thereto (including without limitation this Settlement Agreement), shall be made for any purpose in the Litigation.

<u>**PROSPECTIVE RELIEF**</u>

**4.      Instruction to Payors.**

Annually, for a period of three years from the Effective Date as defined in the Definition Section of this Settlement Agreement, Coventry will direct its workers' compensation payor clients to send to Coventry, for each provider bill for workers' compensation services, the amount that the payor clients determine to be the maximum amount payable for the services indicated on the bill under applicable state or federal law. Coventry shall have no obligation to audit or independently verify that its clients comply with its direction.

6

### 5.    Education to Provider Service Agents.

Coventry will undertake a program to train and educate its provider service agents who are responsible for answering the Coventry toll-free telephone number included on provider Explanations of Review ("EORs"). Training will include Coventry's interpretation of the provider agreement language, new provider agreement amendments, payor client submission requirements, and the pricing that results from the application of the provider agreement to the clients' submitted data. Agents will be shown specific pricing examples to ensure that they understand how the pricing works and that they are able to accurately explain it to providers.

Training will also include clarification that the Workers' Compensation Allowable amount ("WCA") payors send to Coventry is the amount that the payors determine to be the maximum amount payable to the provider under applicable state or federal law.

The training will begin within thirty (30) days after the Effective Date, will be required annually for a period of three years from the commencement of the training, and compliance will be tracked internally by Coventry on Aetna's learning center for the same period of three years.

### 6.    Discounts off of Billed Charge Permitted.

Coventry's instruction to payors described in Paragraph 4 of this Settlement Agreement above will result in a discount off a provider's billed charge if: (1) the billed charge is less than the maximum payable under the applicable state or federal workers' compensation fee schedule; and (2) reimbursement is computed pursuant to a workers' compensation reimbursement provision of the provider agreement that provides for

7

payment of a percentage of the "maximum amount payable" under applicable laws, rules, regulations, or guidelines. The Parties agree that, under these conditions, a discount off a provider's billed charge is permitted.

### 7. Provider Right to Terminate.

As described in Paragraph 15.b. of this Settlement Agreement, the Notice to Settlement Class members will specifically state that if a Settlement Class member does not want to be subject to a provider agreement that allows for such a discount, the Settlement Class member may terminate its provider agreement (or the workers' compensation portion of its provider agreement if the provider has contracted for multiple products) as provided in the Notice.

### MONETARY RELIEF

### 8. Class member groups.

Notice of the settlement (the "Notice") will be sent to providers who are identified by the methodology described in Exhibit 1 within sixty (60) days after entry of an order for preliminary approval of the settlement, as provided in Paragraph 15.b below. The Notice will be in the form of Exhibit 2. The Settlement Class will be divided into three groups of providers who receive the Notice: (1) "Notified Class Members;" (2) "Self-identified Class Members;" and (3) "Actual Damages Class Members." Notified Class Members will be all providers who receive the Notice but who do not qualify to be Self-identified Class Members or Actual Damages Class Members. Self-identified class members will be providers who submit documentation demonstrating that they are Self-identified Class members in accordance with the requirements specified below.

8

Actual Damages Class Members will be providers who submit individual claims in accordance with the requirements specified below that are approved by the Claims Administrator.

**9.    Payment to Settlement Class Members.**

**a.    Guaranteed Fund.** Coventry will establish a Guaranteed Fund in the amount of $5,000,000.00. Coventry will fund the Guaranteed Fund by depositing $5,000,000.00 with the Claims Administrator no later than 30 days after the Effective Date, from which Base Guaranteed Payments and Additional Guaranteed Payments will be paid. Any interest or earnings that accrue on such funds will be paid to Coventry. The participation of the Settlement Class members in the Guaranteed Fund, and thus the amount each will receive, will be determined, in part, by their response to the Notice.

**i.    Base Guaranteed Payment.**

Every provider who receives the Notice will, as a Notified Class Member, receive a $50 payment from the Guaranteed Fund (the "Base Guaranteed Payment") without the necessity of submitting any documents, provided, however, that if the number of Notified Class Members exceeds 60,000, then the portion of the Guaranteed Fund allocated to Base Guaranteed Payments will be capped at $3,000,000, and the Base Guaranteed Payment will be reduced so that each Notified Class Member will receive a pro rata share of $3,000,000. The Base Guaranteed Payment will be accompanied with instructions on how to attempt to become a Self-Identified Class Member and an Actual Damages Class Member.

9

No later than forty-five (45) days after the Effective Date, Coventry will begin sending the Base Guaranteed Payments to Notified Class Members. The Base Guaranteed Payments will be accompanied by instructions to Notified Class members on how to submit a claim for an Additional Guaranteed Payment and/or an Individual Claim Payment, as described below. The instructions are attached as Exhibit 3 to this Settlement Agreement.

### ii.    Additional Guaranteed Payment.

Notified Class Members may also choose to attempt to establish that they are Self-identified Class Members by submitting a claim form (Exhibit 4) along with copies of: (1) the first page of their provider agreement showing that it is a First Health provider agreement; (2) the signature page and any other appropriate pages of the provider agreement showing that the provider agreement was executed by First Health and the Self-identified Class Member and that the provider agreement was effective at some time between April 1, 1998 and June 30, 2007); and (3) the Appendix A to the provider agreement in order to verify that the Appendix A contained the term "maximum amount payable" in the provision relating to reimbursement for services rendered to occupationally ill or injured employees. The provider must submit all information necessary to adjudicate the claim; the administrator will not be required to consult any information other than that submitted by the provider in its claim.

The Claims Administrator will verify that the provider is a Self-identified Class Member based solely on the claim form and documents submitted by the provider. The administrator will verify from the first page of the provider agreement that the

10

contracting party is First Health and that the provider agreement identifies the provider submitting the claim. It will verify from the execution page and other pages submitted by the provider that the provider agreement was executed by Coventry and the provider. It will verify from the first page and the execution page that the provider agreement was in effect at some time between April 1, 1998 and June 30, 2007.  It will then verify that the Appendix A to the provider agreement submitted by the provider has the term "maximum amount payable" in the provision relating to reimbursement for services rendered to occupationally ill or injured employees.

Providers who establish their eligibility to be Self-identified Class Members will receive, as an Additional Guaranteed Payment, pro rata shares of the remaining Guaranteed Fund that is not paid to Notified Class Members as Base Guaranteed Payments. The Additional Guaranteed Payment will be determined by dividing the remaining Guaranteed Payment Fund by the number of Self-Identified Class Members as determined by the Claims Administrator.   Providers will **not** be required to demonstrate that they submitted bills having a billed charge for a service that was less than the state or federal fee schedule amount for that service to be eligible for an Additional Guaranteed Payment as a Self-identified Class Member.

Notified Class Members will have a one hundred twenty (120) day claim submission period (the "Claim Submission Period") within which to submit claims for Additional Guaranteed Payments. The Claim Submission Period will begin on the date the Claims Administrator sends to Notified Class Members their Base Guaranteed Payments and instructions and claim forms for submitting claims for Additional

11

Guaranteed Payments and Individual Claim Payments. Claims for Additional Guaranteed Payments must be received by the Claims Administrator before the end of the Claim Submission Period.

**b.   Individual Claim Fund:**   Coventry will provide for an Individual Claim Fund in an amount not to exceed $3,500,000.00 (the "Maximum Claims Amount"), to be established and funded only as and when claims for Individual Claim Payments are approved in accordance with the procedure set forth below. In addition to receiving payment out of the Guaranteed Fund, Notified Class Members may choose to submit a claim for an Individual Claim Payment to attempt to demonstrate their eligibility to be Actual Damages Class Members.

Each Notified Class Member that chooses to make a claim for an Individual Claim Payment in addition to a payment from the Guaranteed Fund must submit items (1), (2), and (3) described above to establish that the provider is a Self-identified Class Member, and in addition must submit a detailed claim form (Exhibit 5) and: (4) copies of Explanations of Review for bills submitted after March 25, 1999, and during the period after the effective date of the First Health provider agreement but before termination of the First Health provider agreement to support its claim for an Individual Claim Payment; and (5) a copy of the applicable state or federal fee schedule amount in effect on the date of service for each procedure for which additional payment is claimed, if any, or a copy of the applicable State rule or regulation governing provider reimbursement, along with any accompanying values. The provider must submit all information necessary to adjudicate the claim; the administrator will not be

12

required to consult any information other than that submitted by the provider in its claim. The Instructions for the Claim Form for Individual Payment is attached as Exhibit 6. The Claims Administrator will determine the provider's eligibility to receive an Individual Claim Payment based solely upon the information submitted by the provider as set forth below; however the administrator, at its discretion, may verify all or part of any given claim, including the fee schedule or any other values submitted by the provider, through an independent review of other sources of information.

Payment to an Actual Damages Class Member will be made from the Individual Claim Fund only if and to the extent that the approved Individual Claim Payment exceeds the amount that the Actual Damages Class Member is entitled to receive from the Guaranteed Fund. In other words, if the Individual Claim Payment amount for an approved individual claim is $4,000 and the provider is eligible to receive $2,500 from the Guaranteed Fund, then the approved Individual Claim Payment will be paid first out of the Guaranteed Fund ($2,500) and then the remainder of the approved claim will be paid out of the Individual Claim Fund ($1,500). If the Claims Administrator approves an Individual Claim Payment in an amount less than the payment amount that the class member would be entitled to receive from the Guaranteed Fund without submitting an individual claim, then the Actual Damages Class Member will still receive the payment out of the Guaranteed Fund for which Self-identified Class Members are eligible, not the lesser amount of the approved Individual Claim Payment. For example, if the Individual Claim Payment would be $800, but the Class Member is entitled to receive $1,500 from the Guaranteed Fund, the Class Member will receive

13

$1,500.  If all approved Individual Claim Payments in the aggregate would cause payments from the Individual Claim Fund to exceed the Maximum Claims Amount of $3,500,000, all payments to Actual Damages Class Members out of the Individual Claim Fund will be reduced by the percentage necessary such that total payments out of the Individual Claim Fund will not exceed the Maximum Claims Amount of $3,500,000.00.

Notified Class Members wishing to become Actual Damages Class Members must submit claims for Individual Claim Payments within the one hundred twenty (120) day Claim Submission Period described above. Claims for Individual Claim Payments must be received by the Claims Administrator before the end of the Claim Submission Period.

Individual Claim Payments will be computed only upon documentation and verification following the expiration of Claim Submission Period. Each Individual Claim Payment in excess of the amount the Actual Damages Class Member is eligible to receive from the Guaranteed Fund will be funded and paid after all claims for Individual Claim Payments have been fully and finally adjudicated (including all appeals, objections, and adjustments) by the Claims Administrator. No payments, either from the Guaranteed Fund or the Individual Claim Fund, will be made until after the Effective Date as defined in the Definition Section of this Settlement Agreement.

For each Notified Class Member that establishes he, she, or it is a Self-identified Class Member and submits a claim for an Individual Claim Payment to become an Actual Damages Class Member, the Claims Administrator will determine the provider's

14

eligibility for such payment and the amount of such payment based on the following calculation:

1.    Payment will be based only on bill lines for which the billed charge for the service was less than the applicable state or federal fee schedule amount for that service. Bill lines contained in bills that were not paid on a bill line basis (for example, capped amount, multiple reductions, maximum number of services) will not be eligible for additional payment.

2.    The percentage of "maximum amount payable" specified in the workers' compensation reimbursement provision in Appendix A to the provider agreement will be applied to the billed charge for each eligible bill line. If the percentage applied to the billed charge does not equal the reimbursement amount on the EOR, the bill line will not be eligible for additional payment, because reimbursement would not have been computed based upon the contract percentage applied to the billed charge. If the percentage applied to the billed charge does equal the reimbursement amount on the EOR, the remaining steps will determine eligibility for additional payment.

3.    The percentage of "maximum amount payable" specified in the workers' compensation reimbursement provision in Appendix A will be applied to the state or federal fee schedule amount for the service on each remaining eligible bill line.

15

4.      The Actual Damages Class Member will be eligible to receive the difference between (a) the lesser of the amount computed in Step 3 and the billed charge; and (b) the reimbursement amount for the bill line indicated on the EOR.

5.      The Individual Claim Payment for each Actual Damages Class Member will be the total of the amounts computed through this methodology for all eligible bill lines, less the amount payable to the Actual Damages Class Member from the Guaranteed Fund.

**10.  Attorneys' Fees.**

The Parties agree that reasonable attorneys' fees and costs generated during the course of the Litigation shall be paid to class counsel in an amount to be awarded by the Court up to and not exceeding $2,600,000.00.  Coventry shall not be required to pay more than $2,600,000.00 in attorneys' fees, in aggregate, to class counsel or to any other person or firm seeking fees on behalf of any member of the Settlement Class, with respect to the Litigation.  Coventry will not oppose any request by class counsel for an award of attorneys' fees and costs for a total amount not to exceed $2,600,000.00, and agrees not to appeal an award of attorneys' fees and costs in an amount of $2,600,000.00 or less.  Class counsel shall not seek attorneys' fees and costs in an aggregate amount greater than $2,600,000.00, and agrees not to appeal any award below $2,600,000.00. Fees and costs approved by the Court will be released to lead class counsel no later than thirty (30) days after the Effective Date.

16

The settlement with the Settlement Class is separate from Coventry's agreement not to oppose a request by class counsel for attorneys' fees and costs as described above. Approval of the settlement between Coventry and the Settlement Class is not contingent upon approval by the Court of attorneys' fees and costs in any particular amount.

**11.    Settlement Administration.**

Coventry will engage a class action settlement administrator (the "Claims Administrator") to administer the settlement and adjudicate all claims submitted by Settlement Class Members. Coventry will pay all administrative costs related to this settlement, including the fees and expenses of the Claims Administrator.    Coventry, Class Counsel and the Claims Administrator shall not be liable for any conduct – except intentional misconduct – taken in the administration of the settlement.

**12.    Service Awards.**

Coventry will not oppose payment to the named plaintiffs Chehalem Physical Therapy, Inc. and South Whidbey Physical Therapy and Sports Clinic for their service to the Settlement Class in an amount not to exceed $10,000.00 each. Class counsel agrees that it will not seek service awards greater than $ 10,000.00 for each named plaintiff. Coventry shall pay the amount awarded by the Court for service awards to the named plaintiffs no later than thirty (30) days after the Effective Date.  The incentive payments shall be paid to the order of Chehalem Physical Therapy, Inc. and South Whidbey Physical Therapy and Sports Clinic, but shall be sent care of lead class counsel.  The

17

service awards to be paid to Chehalem and South Whidbey are not conditioned on their support of this Settlement.

### 13.   Release of Claims.

In consideration of the relief provided in this Settlement Agreement, as of the Effective Date, Plaintiffs and Settlement Class members release Coventry, including its present and former parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, and attorneys of and from any and all actions, causes of action, claims, suits, demands, rights, damages, losses, costs, expenses, fees, accounts, judgments, executions, debts, obligations, and any and all other liabilities of any kind or nature whatsoever, either in law or in equity, whether known or unknown, that Plaintiffs and Settlement Class members brought in the Litigation, or based upon the factual predicate underlying the claims in the Litigation, even though the claim was not presented and might not have been presentable in the Litigation, including but not limited to all claims arising out of or relating to discounts applied to billed charges less than state or federal fee schedule amounts for services rendered to occupationally ill or injured employees pursuant to First Health provider agreements having an Appendix A that has the term "maximum amount payable" in the provision relating to reimbursement for services rendered to occupationally ill or injured employees. Plaintiffs and settlement class members further release Coventry's payor clients from claims specifically arising out of or relating to payments made based on discounts applied by Coventry or First Health to billed charges when those charges were less than state fee schedule amounts for services rendered to occupationally ill or injured

18

employees pursuant to First Health provider agreements having an Appendix A that has the term "maximum amount payable" in the provision relating to reimbursement for services rendered to occupationally ill or injured employees.

## SETTLEMENT PROCEDURE

**14.    Preliminary Approval.**

Within 10 days after execution of this Settlement Agreement, the plaintiffs shall submit this Settlement Agreement to the Court, and shall file a motion, joined by Coventry, requesting the Court to, among other things:

a.    Preliminarily approve this Settlement Agreement;

b.    Conditionally certify the Settlement Class;

c.    Find that the proposed Notice, attached hereto as Exhibit 2, satisfies all federal and state Due Process requirements as well as all requirements under Rule 23(c)(2)(B) of the Federal Rules of Civil Procedure, and direct its mailing to members of the Settlement Class as provided in this Settlement Agreement.

d.    Find that the method and manner of identifying Settlement Class members (Exhibit 1) and providing notice will reasonably and adequately advise the members of the Settlement Class of their rights and obligations under the Settlement Agreement;

e.    Schedule a hearing, no sooner than ninety (90) days after notice of the settlement is sent by Coventry to the United States and State Attorneys General, as provided in Paragraph 16 below, to determine the reasonableness, adequacy and

19

fairness of this Settlement Agreement pursuant to the Federal Rules of Civil Procedure, and whether it should be given final approval by the Court; and,

      f.    Enter an order granting preliminary approval of the settlement and providing for related relief as set forth in the proposed Order Granting Motion for Preliminary Approval of Class Settlement attached hereto as Exhibit 7.

    **15.**    **Notice to the Class.**

    **a.**    **Methodology for Identifying Settlement Class Members:**  The parties have developed a methodology for identifying Settlement Class members and deciding what providers to notify that does not involve reviewing individual provider contracts. The goal in developing this methodology was to reasonably identify and notify providers who have or have had a First Health provider agreement, whose provider agreements have an Appendix A that has the term "maximum amount payable" in the reimbursement provision for reimbursement for services rendered to occupationally ill or injured employees, and who have had at least some bills discounted during the class period, March 25, 1999 through the present, by discounting the billed charge when the billed charge was less than the applicable state or federal fee schedule amount. The methodology is attached to this Settlement Agreement as Exhibit 1. The Parties agree that the methodology attached hereto as Exhibit 1 reasonably accomplishes this goal in identification of Settlement Class members. The Parties further agree and understand that, due to the difficulty of identifying Settlement Class members, of necessity notice will be sent to a larger group of health care providers that may also include non-Settlement Class members to ensure that Settlement Class members receive notice of the

20

settlement to the extent possible, and therefore some health care providers who are not Settlement Class members may receive a Base Guaranteed Payment as described above.

      **b.**    **Notice:** The Notice will be sent to the members of the Settlement Class as directed by the Court.   Notice will be sent, at Coventry's expense, by United States mail, to Settlement Class members that have been identified in accordance with the methodology attached hereto as Exhibit 1.   To the extent Notices are returned as undeliverable, the settlement administrator will undertake reasonable efforts to obtain current addresses for the Settlement Class members, including searching in the National Change of Address (NCOA) database, and/or Lexis Nexis.   Based upon the number of Notices returned as undeliverable, the Parties will evaluate whether further notice by publication is necessary.   Notice will be sent within sixty (60) days after entry of an order for preliminary approval of the settlement.   The Parties agree that notice in this manner is the best notice practicable under the circumstances, as required by Fed. R. Civ. P. 23(c)(2)(B).

      The Parties agree that the Notice will state that Coventry's instruction to payors described above will result in a discount off a provider's billed charge if: (1) the billed charge is less than the maximum payable under the applicable state or federal workers' compensation fee schedule; and (2) reimbursement is computed pursuant to a workers' compensation reimbursement provision of the provider agreement that provides for payment of a percentage of the "maximum amount payable" under applicable laws, rules, regulations, or guidelines. As described in the Notice, if a Settlement Class member does not want to be subject to such a discount, the Settlement Class member

21

may terminate its provider agreement by sending a termination notice within 30 days to a post office box to be provided in the Notice; provided however that this option to terminate applies solely to the workers' compensation portion of the Settlement Class member's provider agreement. In other words, if the Settlement Class member has contracted for multiple products, the Settlement Class member may terminate only the workers' compensation portion of its provider agreement. The provider agreement (or workers' compensation portion of the provider agreement if the provider agreement covers more than one product) will terminate 60 days after Coventry receives the termination notice.  The Notice will also inform Settlement Class members that if they choose not to terminate the workers' compensation portion of their provider agreements, they understand and agree that discounts may be applied to billed charges less than state or federal fee schedule amounts pursuant to their provider agreements. The Notice will also inform Settlement Class members that if they do not bill below the fee schedule, Coventry's instruction will make no difference, because then the discount will be taken off the maximum amount payable under applicable state or federal law. The Parties agree that the Notice to the members of the Settlement Class satisfies all federal and state Due Process requirements as well as all requirements under Rule 23(c)(2)(B) of the Federal Rules of Civil Procedure.

**16.    Notice to Attorneys General.**

As required by 28 U.S.C. § 1715, within ten (10) days of submitting this proposed Settlement to the Court for Preliminary Approval, Coventry or the Claims Administrator shall serve upon the Attorney General of the United States, and each

22

state Attorney General a notice of this proposed Settlement. The notice sent to the Attorneys General shall comply with and contain all materials and information required by 28 U.S.C. § 1715(b) 1-8.

### 17.    Right to Opt Out.

The Notice will inform members of the Settlement Class of their right to opt out of the Settlement Class and thereby be excluded from the Settlement Class. All members of the Settlement Class who properly submit a timely written request to opt out of the Settlement Class and not be bound by the terms of the Settlement Agreement, shall not receive the relief provided to the Settlement Class in the Settlement Agreement, and shall not receive any of the Monetary Relief outlined above, including the Base Guaranteed Payment, Additional Guaranteed Payment, or Individual Claim Payment. A request to opt out of the Settlement Class must be in writing, must be signed and must provide the name, address and phone number of the provider seeking to opt out. The request must also affirm that that the provider is a member of the Settlement Class. A request to opt out must be received by the Claims Administrator and counsel for the Parties at the addresses provided in the Notice not later than 90 days after Notice is sent to the Settlement Class.

### 18.    Right of Objection.

Any member of the Settlement Class may object to the settlement by filing a written objection with the Court, and serving counsel for all Parties, no later than the date listed in the Notice. The objection shall be written and signed by the objecting Settlement Class Member or its, his, or her counsel, and must include (a) the provider's

23

name, signature, title, address and telephone number; (b) a notice, if applicable, of the objector's intention to appear, either in person or through an attorney, with the name, address and telephone number of the attorney, if any, who will appear; (c) certification that the person is a member of the Settlement Class; (d) a statement of each objection asserted; (e) a detailed description of the facts underlying each objection; (f) a detailed description of the legal authorities, if any, supporting each objection; (g) a list of exhibits and/or affidavits the person may offer during the hearing; and (h) a list of all witnesses the person may call to testify at the hearing, along with a summary of each witnesses anticipated testimony.   Any member of the Settlement Class who timely objects to the settlement may appear in person or through counsel, at its, his or her own expense, at the final approval hearing to present any evidence or argument that may be proper and relevant.   No member of the Settlement Class shall be heard and no papers, briefs, or pleadings submitted by any such member shall be received and considered by the Court unless the member's written objection, as described above, is filed and served on or before the date listed in the Notice.  Any member of the Settlement Class who fails to object in the manner prescribed herein, or who fails to timely serve counsel as described herein, shall be deemed to have waived its, his or her objections and forever be barred from making any such objections in the Litigation or in any other action or proceeding.

**19.    Final Judgment and Order.**

At the final hearing, pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Parties shall jointly move the Court to enter an Order:

      a.    Granting final approval of this Settlement Agreement;

24

b.    Finding that the terms of this Settlement Agreement are fair, reasonable and adequate as to the Settlement Class;

c.    Finding that the Notice provided to the members of the Settlement Class satisfies all federal and state Due Process requirements as well as all requirements under Rule 23(c)(2)(B) of the Federal Rules of Civil Procedure;

d.    Providing that each member of the Settlement Class, except those who choose to exclude themselves pursuant to Paragraph 17 of this Settlement Agreement, shall be bound by this Settlement Agreement and Release;

e.    Approving such opt out requests as have been properly and timely submitted in accordance with Paragraph 17 above;

f.    Entering an order granting final approval of the settlement and providing for related relief as set forth in a proposed Order Granting Motion for Final Approval of Class Settlement to be submitted to the court by the parties;

f.    Dismissing all claims against Coventry on the merits and with prejudice and entering final judgment thereon; and

g.    Providing that the Court shall maintain jurisdiction over the implementation of this Settlement Agreement and any dispute, claim, or action arising out of or related to this Settlement Agreement.

The Final Judgment and Order shall be deemed final and effective on the Effective Date as defined in Paragraph 1 above.

25

**20.    Plaintiffs' Participation in the Settlement Class.**

Chehalem and South Whidbey agree to participate as members of the Settlement Class, and not opt out of, the Settlement Class.

**21.    Defendant's Right to Withdraw**

Coventry has the option to withdraw from this Settlement Agreement, and thereby render the Settlement Agreement null and void if more than five percent (5%) of the Settlement Class members exclude themselves from the Settlement Class (which process is set forth in Paragraph 17 of this Settlement Agreement).

**22.    Effect of Non-Approval.**

This Settlement Agreement shall become null and void, all orders pursuant to this Settlement Agreement shall be deemed vacated, and the Litigation may continue, in the event that:

a.    This Settlement Agreement, the Preliminary Approval Order, and the Final Judgment and Order are not approved in all material respects by the Court; or

b.    This Settlement Agreement, The Preliminary Approval Order, or the Final Judgment and Order is reversed, vacated, or modified in any material respect by the Court or any other court.

**23.    Coventry's Right to Communicate with Settlement Class Members.**

The Parties agree that prior to the Effective Date and during the administration of this Settlement, Coventry (but not its outside attorneys) may communicate directly with members of the Settlement Class regarding any and all matters outside the scope of the Litigation, including matters that arise in the ordinary course of business.

26

## GENERAL TERMS AND CONDITIONS

**24.    Settlement Negotiations.**

This Settlement Agreement is the result of extensive arm's-length negotiations between the parties and their detailed study of all the factors involved, both legal and factual, and included the extensive participation of Mediator Infante.  Taking into account the risks, uncertainties, burdens and costs of further litigation, Chehalem, South Whidbey and Coventry have each concluded that it is in their respective best interests, and in the best interests of the members of the Settlement Class, to compromise and settle the Litigation in the manner and on the terms set forth in this Settlement Agreement.    Nothing in this Settlement Agreement is an admission of liability or wrongdoing by Coventry.

**25.    Drafting.**

The Parties agree that no single party shall be deemed to have drafted this Settlement Agreement or any portion thereof, and that for purposes of construing any ambiguity it is agreed that this Settlement Agreement is the collaborative effort of all attorneys and there will be no construction of an ambiguity against any Party on account of any claim that such Party drafted the subject language.

**26.    Miscellaneous.**

a.    The parties shall have no further discovery or document preservation obligation resulting from the Litigation after the Effective Date, as defined in the Definition Section of this Settlement Agreement.  The Parties agree to destroy, dispose of and/or return documents in accordance with the terms of paragraph 29 of the

27

parties' Stipulated Protective Order Governing Confidential Health Information dated May 13, 2011, and paragraph 26 of the parties' Stipulated Protective Order Governing Protected Material Other than Confidential Health Information dated August 3, 2010.

b.    This Settlement Agreement shall not be deemed an admission of wrongdoing or liability of any kind by Coventry, or as an acknowledgment that a class can be certified on the claims being released in this Litigation.  The settlement and all negotiations, procedures, related acts, statements or conduct of the parties or their counsel shall not be offered into evidence or otherwise used against Coventry in any case or any other case or proceeding, except to enforce the terms of the settlement.

c.    The Parties agree that, in the event that the Litigation is not fully and completely settled pursuant to the terms and conditions of this Settlement Agreement, nothing contained in this Settlement Agreement can be used by any person for any purpose, including with respect to the issues of class certification or the merits of the claims or defenses asserted in the Litigation or any other litigation.

**27.    Authorization.**

Counsel for all Parties are expressly authorized by the parties whom they represent to enter into this Settlement Agreement, to take all appropriate action required or permitted to be taken by such parties pursuant to this Settlement Agreement to effectuate these terms, and to execute any other documents required to effectuate the terms of this Settlement Agreement.

28

**28.    Counterparts.**

This Settlement Agreement may be executed in one or more counterparts.  All counterparts and each of them shall be deemed to be one and of the same instrument provided that counsel for the Parties to this agreement shall exchange among themselves original signed counterparts.

**29.    Integration of Exhibits.**

The exhibits of this Settlement Agreement are an integral and material part of the settlement and are hereby incorporated and made a part of the Settlement Agreement.

**30.    Cooperation.**

The Parties shall cooperate in presenting papers, affidavits and/or testimony to the Court as may be necessary to effectuate the purpose and intent of this agreement.

**31.    Integration Clause.**

This Settlement Agreement represents the entire and sole agreement negotiated and agreed to by and between Chehalem, South Whidbey and Coventry and supersedes any prior agreement and also supersedes the Parties' Memorandum of Understanding dated January 10, 2014 .  This Settlement Agreement is an integrated document and shall not be amended, modified, or supplemented, nor shall any of its provisions be deemed waived, unless by written agreement signed by the respective attorneys for the Parties.

**32.    No Admission.**

Nothing in this Settlement Agreement shall constitute or be construed as an admission by Coventry of any liability or wrongdoing whatsoever, nor shall any

29

portion of this Settlement Agreement be offered or received in evidence, or subject to discovery, in this or any other action or proceeding except in an action brought to enforce the terms of the Agreement or except as may otherwise be required by law or court order.

### 33.   Continued Cooperation.

The Class Representatives, Plaintiffs Counsel, and Defense Counsel agree to cooperate fully with one another in seeking the Court's approval of the terms of this Settlement Agreement and to use their best efforts to consummate the Settlement Agreement.  Each will exert every reasonable effort, and will act reasonably and in good faith, to agree upon and execute, at the earliest practicable time, such other documentation as may be required to: (1) implement the matters enumerated in this Settlement Agreement and Release; (2) obtain preliminary and final approval by the Court of the terms and conditions set forth in this Settlement Agreement; (3) secure a final judgment as to the claims asserted in the action against Coventry without costs for any party; (4) obtain Final Approval, and (5) handle any appeals from the Final Approval

### 34.   Settlement Website.

By no later than sixty (60) days after entry of the Preliminary Approval Order, the Claims Administrator will establish a website (the "Settlement Website").  From the time that it is established through the date of the Fairness Hearing, the Settlement Website will contain means by which providers visiting  the Settlement Website can attempt to establish themselves as members of the Settlement Class. Thereafter, the

30

Claims Administrator will periodically change the content of the Settlement Website to provide updated information to members of the Settlement Class.   No later than fourteen (14) days following Final Approval and continuing through the date that is the Claim Submission Period, the Settlement Website will provide members of the Settlement Class with information regarding how to obtain and submit claim forms.  If providers are able to establish that they are Self-identified Class Members or Actual Damages Class Members through the means provided through the website, they will be entitled to receive the payment(s) commensurate with that status.  They will not be entitled to receive a Base Guaranteed Payment.   Plaintiffs' Counsel and Defense Counsel will work together in good faith to reach agreement on the format of and content of the information to be provided on the Settlement Website; any dispute between the parties regarding the format of or content of the automated information to be provided on the Settlement Website will be submitted to the Court.  At all times, the information available on the Settlement Website will include contact information for Plaintiffs' Counsel.

**35.  Signatures of Counsel.**

Counsel for the parties indicate by signing below their approval of the form of this Settlement Agreement (and Exhibits hereto), and, in the case of Plaintiffs' Counsel, their representation and warranty of authority to bind the Settlement Class described herein, subject to court approval, and their acceptance of the provisions regarding attorney fees.

31

36.    **Choice of Law.**

This Settlement Agreement shall be governed by the substantive law of the state of Oregon without regard to the rules in the state of Oregon regarding conflicts of laws.


STOLL STOLL BERNE LOKTING & SHLACHTER P.C.

By: _____
Steve D. Larson
Joshua L. Ross
209 S.W. Oak Street, Suite 500
Portland, Oregon 97204

-AND-

Diana E. Godwin, OSB No. 761495
Law Offices of Diana E. Godwin
1500 NE Irving Street Suite 430
Portland, Oregon 97232

-AND-

Thomas A. Filo
Cox Cox Filo Camel & Wilson, LLC
723 Broad Street
Lake Charles, Louisiana 70601

-AND-

Stephen B. Murray
Arthur M. Murray
Korey A. Nelson
Stephen B. Murray, Jr.
Murray Law Firm
650 Poydras Street, Suite 1100
New Orleans, Louisiana 70130

-AND-


ROBINS, KAPLAN, MILLER & CIRESI LLP

By: _____
V. Robert Denham, Jr.
Jennifer A. Adler
1201 West Peachtree Street, Suite 2200
Atlanta, Georgia 30309

-AND-

John M. McGrory, Jr.
DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2300
Portland, Oregon, 97201

*Attorneys for Defendant*


32

Joseph Payne Williams, Sr.
Richard Bray Williams
Williams Family Law Firm, LLC
162 Jefferson Street
Natchitoches, Louisiana 71457

***Attorneys for Plaintiffs and the Class***

33

*Chehalem Physical Therapy, et al. v. Coventry Health Care*
**Methodology for Identifying Providers to Receive Settlement Class Notice**

This document describes the methodology that was used to identify providers who will receive notice of the class settlement in this action.

## Data Sources

Provider data was extracted from Workbench (First Health Provider Data Base) and CPD (Coventry Provider Data Base).

Data was extracted for dates beginning 4/1/98 through 12/31/13.

Pricing data was extracted from MCPS (First Health/Coventry Managed Care Pricing System).

Pricing data used was only for claims priced under the workers compensation product. Providers that did not submit workers' compensation bills during the class period were excluded.

Providers that were paid in non-regulated fee schedule states were excluded. These states were New Hampshire, New Jersey, Iowa, Indiana, Missouri, Virginia, Wisconsin, Puerto Rico and Virgin Islands.

## Initial Provider Identification

Using Workbench provider data, a list of providers was extracted identifying Provider Name, TIN, Rate Class and Contract Entity. Rate Class identifies the workers compensation participation and Contract Entity identifies the contract basis (First Health and Affordable and other entities acquired by First Health).

Data was pulled on any record with an active workers compensation product from April 1, 1998, through December 2007. (December 1, 2007 is the date that Workbench was migrated to the Coventry Provider Data Base). First Health contracts officially began to be used in August, 1998, but some contracts had been sent to providers before that date. Coventry contracts began to be used as of January 2007. Because of delays in execution and credentialing, the effective date for some First Health contracts would have been after January 1, 2007. It is assumed that by the end of 2007, when Workbench was replaced by CPD, contracts primarily would have been Coventry Health Care contracts.

Records for individual and group practices and facilities (hospital/ASC/ancillaries) were extracted.

Providers must have at least a Contract Entity equal to FH (First Health). Contract Entity equal to First Health includes contracts of First Health as well as Affordable and other entities acquired by First Health.

Providers who have more than one Contract Entity were included if they have at least one Contract Entity equal to First Health.

Providers must have at least one Participation Class equal to WC (First Health workers compensation product). Providers having more than one Participation Class were included if at least one Participation Class is equal to WC.

Those providers identified as Hospitals, ASCs, or other similar ancillary facilities were reviewed to determine if an outpatient fee schedule was included in its rates. Generally hospitals will have rate package set-ups that do not include "maximum amount payable" language.  However, some hospital or other ancillary contracts may include "break out" schedules similar to outpatient rate schedules.  Hospitals or other ancillary contracts with these "break out" schedules were included.

This Base Provider File included those providers who had a First Health contract, active at some point between 1998 and 2008, and participated and were paid pursuant to the workers compensation rates of the First Health contact.

**<u>Data Analysis</u>**

MCPS claims data were analyzed for the list of Workbench and CPD providers and associated Tax Identification Numbers (TINs) identified by the initial provider identification procedure described above. Since hospital bills are typically priced at a bill-level and only contain a bill-level WC fee-schedule amount or a distorted value where the full fee-schedule is placed on a single line, the data for all hospitals is at a bill-level only.  The data for OCN providers is at a line-level.

The following is a summary of the criteria that were used to extract information for each spreadsheet of providers.

Workbench Hospitals

&ast;  Bill was priced in MCPS with the "WC" participation class using a FH Provider ID (PROV_ID) and the TIN (TAX_ID) from the initial provider list with a NTWRK_GRP_CD = 'HSP'

\*     Bill was received by MCPS between 4/1/1998 and 9/30/2007 (Date of Conversion to CPD)

\*     Total Billed Charges equals the bill-level WCA Amount submitted by the client

\*     Bill level negotiated rate is greater than zero

\*     WC State was not New Hampshire, New Jersey, Iowa, Indiana, Missouri, Virginia, Wisconsin, Puerto Rico and Virgin Islands

\*     If the bill was adjusted in MCPS, only the latest adjustment was included assuming it meets the criteria described above

Workbench OCN

\*     Bill was priced in MCPS with the "WC" participation class using a FH Provider ID (PROV_ID) and the TIN (TAX_ID) from initial provider list with a NTWRK_GRP_CD = 'OCN'

\*     Bill was received by MCPS between 4/1/1998 and 9/30/2007 (Date of Conversion to CPD)

\*     Total Line Charges equals the line-level WCA Amount submitted by the client

\*     Line level negotiated rate is greater than zero

\*     WC State was not New Hampshire, New Jersey, Iowa, Indiana, Missouri, Virginia, Wisconsin, Puerto Rico and Virgin Islands

\*     If the bill was adjusted in MCPS, only the latest adjustment was included assuming it meets the criteria described above

CPD Hospitals

\*     Bill was priced in MCPS with the "WC" participation class using a CPD Provider ID (CPD_ID) and the TIN (TAX_ID) from the initial provider list with a PRV_TYPE = 'H' (Hospital)

\*     Bill was received by MCPS between 10/1/2007 (Date of Conversion to CPD) and 12/31/2013

    *      Total Billed Charges equals the bill-level WCA Amount submitted by the client

    *      Bill level negotiated rate is greater than zero

    *      WC State was not New Hampshire, New Jersey, Iowa, Indiana, Missouri, Virginia, Wisconsin, Puerto Rico and Virgin Islands

    *      If the bill was adjusted in MCPS, only the latest adjustment was included assuming it meets the criteria described above

CPD OCN

    *      Bill was priced in MCPS with the "WC" participation class using a CPD Provider ID (CPD_ID) and the TIN (TAX_ID) from the initial provider list with a PRV_TYPE != 'H' (Ancillary, Physician)

    *      Bill was received by MCPS between 10/1/2007 (Date of Conversion to CPD) and 12/31/2013

    *      Total Line Charges equals the line-level WCA Amount submitted by the client

    *      Line level negotiated rate is greater than zero

    *      WC State was not New Hampshire, New Jersey, Iowa, Indiana, Missouri, Virginia, Wisconsin, Puerto Rico and Virgin Islands

    *      If the bill was adjusted in MCPS, only the latest adjustment was included assuming it meets the criteria described above

**Results**

The initial list of providers included 13,754 TINs and a total of 60,916 distinct providers. The final list, after duplication resulting from providers appearing in both Workbench data and CPD data was removed and the data analysis was performed, contained 44,983 distinct providers, 37,923 of which had billing activity during the settlement class period.

**Limitations**

The methodology was designed to attempt to identify those providers who had First Health provider agreements and who submitted workers' compensation bills

during the class period for which the billed charge for a service was less than the state fee schedule amount for that service and a discount was applied to the billed charge amount. The methodology has some limitations, however.

An individual contract review would be necessary to identify with specificity the providers whose provider agreements were on First Health paper. Provider agreement effective dates were therefore used to identify providers that were most likely to have First Health agreements. To attempt to ensure that providers with First Health paper were identified, the date range during which First Health agreements were primarily used was expanded to account for the time it takes to negotiate and execute provider agreements, to credential the providers, and implement the agreements. It is likely that the data include providers that did not have provider agreements that were on First Health paper.

Of the providers identified with a First Health Contract Entity and First Health Rate Class, a percentage of the "base" provider list also had a CCN rate class attached to the providers' records.  Records with a CCN rate class include providers who also had a CCN contract in addition to their First Health contract. Those records, based on client set-up, would price to the contract rate defined by client access/provider linking.  This means a provider could price under his First Health contract rate for one client, but his CCN contract rate for another. 46% of the providers had overlapping CCN contracts. An unknown percentage (estimated to be approximately 10%) would have priced under their CCN contracts.

Some percentage of the providers identified through this methodology would not have had "maximum amount payable" language in their contract reimbursement appendix. A review of Oregon and Washington appendix forms indicated that "maximum amount payable" language was only present in 48% of the appendix forms. It cannot be determined how many providers used the forms with "maximum amount payable" language without a review of individual contracts.

Some provider records have multiple TINs per unique provider, that is, a provider record contains two or more active TINs. However, one or more of those TINs are either terminated or there was a conversion error. Without provider-by-provider detailed research it would be impossible to identify which providers this issue affects.

Some providers appear on both the Workbench and CPD lists. That duplication will need to be eliminated as a part of the notification process. In addition, More than one address is listed for some providers. The address discrepancy will also need to be resolved.

There is not a one–to-one relationship between the providers indicated on the provider lists and contract entities. In many cases multiple providers submit bills

through a single contract entity. For example, a physician group practice may have had a provider agreement with First Health and each individual physician in the group billed through the group practice's TIN. Without a review of individual contracts, it is not possible to identify which provider or providers that bill through a single TIN had provider agreements with First Health. As a result, the lists include providers that did not have individual contracts with First Health.

Coventry's data do not enable Coventry to identify bills that contained a billed charge for a service that was less than the state fee schedule amount for the service. As a surrogate for that requirement of the class definition, providers were included if they submitted billed charges equal to the workers' compensation allowable amount for the service that Coventry received from its payor clients. The data therefore includes providers that submitted billed charges that were equal to, not less than, the state fee schedule amount.

6

Date

Contact Name
PPO Provider Name
Address
City, ST 00000

Dear XX:

You have received this Notice because you may be part of class action lawsuit about compensation for certain workers' compensation medical bills.  The lawsuit claims that Coventry Health Care, Inc. ("Coventry") did not calculate the "maximum amount payable" correctly and underpaid health care providers for services they provided, against the terms of its First Health PPO Provider Agreement.

If you are included, you have the right to know about your options before the Court decides whether to approve the Settlement.  The fact that you have received this Notice, however, is not – by itself – evidence that you are a member of the class.

If you received this Notice you will receive $50 without doing anything or submitting a claim.  You may be eligible to file a claim for additional money.  The amount you may receive will depend upon the total number of people who decide to participate.

Please read the enclosed Notice for more information about the Settlement.  If you have further questions:
- Visit www.CoventrySettlement.com;
- Call 1-800-000-0000
- Email Administrator@coventrysettlement.com

Sincerely,

Exhibit 2
Page 1 of 11

<u>UNITED STATES DISTRICT COURT FOR THE DISTRICT OF OREGON</u>

# If Coventry Reimbursed You for Certain Workers' Compensation Medical Bills Through a First Health PPO Provider Agreement,

## You May be Eligible for a Payment from a Class Action Settlement

*A federal court authorized this notice. This is not a solicitation from a lawyer.*

- A Settlement has been reached with Coventry Health Care, Inc. ("Coventry"), a health benefits company, in a class action lawsuit about compensation for certain workers' compensation medical bills, against the terms of its First Health PPO Provider Agreement. The lawsuit claims that Coventry did not calculate the "maximum amount payable" correctly and underpaid health care providers for services they provided.

- The Settlement includes health care providers who: 1) have or had an eligible First Health provider agreement and 2) have had bills incorrectly discounted under that provider agreement from March 25, 1999 to Month 00, 2014 (*see* Question 5).

- The Settlement will provide payments to Settlement Class Members and/or compensation for discounted bills, with proof of claim (*see* Question 7).

**Your legal rights are affected even if you do nothing. Please read this notice carefully.**

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| SUBMIT A CLAIM | The only way to get an additional payment and/or compensation for incorrectly discounted bills (*see* Question 14). |
| ASK TO BE EXCLUDED | Get no benefits from the Settlement. This is the only option that allows you to participate in any other lawsuit against Coventry about the claims in this case and to not be bound by the discount policy in your provider agreement (*see* Question X). |
| OBJECT | Write to the Court if you don't like the Settlement (*see* Question 15). |
| GO TO A HEARING | Ask to speak in Court about the fairness of the Settlement (*see* Question 20). |
| DO NOTHING | Get $50 payment but no additional payment or compensation. Give up rights. |

- These rights and options—**and the deadlines to exercise them**—are explained in this notice.

- The Court in charge of this case still has to decide whether to approve the Settlement. Payments will only be made if the Court approves the Settlement and after any appeals are resolved. Please be patient.

# BASIC INFORMATION

## 1. Why is there a notice?

A Court authorized this notice because you have a right to know about a proposed Settlement of this class action lawsuit and about all of your options before the Court decides whether to give final approval to the Settlement. This notice explains the lawsuit, the Settlement, and your legal rights.

Judge Dennis J. Hubel of the United States District Court for the District of Oregon is overseeing this case. This litigation is known as *Chehalem Physical Therapy, Inc. v. Coventry Health Care, Inc*., No. 3:09-CV-320-HU. The people who sued are called the "Plaintiffs." Coventry Health Care, Inc. is the "Defendant."

## 2. What is this lawsuit about?

Coventry is a health benefits company. As part of its business, Coventry maintains a network of health care providers, including professionals such as doctors as well as hospitals and other facilities. Coventry enters into provider agreements with these health care providers for them to become members of the network, which is called the First Health Network.

The lawsuit claims that Coventry incorrectly calculated the reimbursement it owed providers for certain workers' compensation medical bills, against the terms of its First Health PPO Provider Agreement. Specifically, it claims that Coventry incorrectly determines the "maximum amount payable" under workers' compensation rules and guidelines whenever it submits a billed charge for a service that is less than the amount specified for that service under the relevant state's fee schedule. The Plaintiffs claim that Coventry cannot apply a discount (as stated in its provider agreement) if the maximum amount that they can be paid under the state's laws, regulations, rules, and guidelines is the billed charge.

Coventry denies that it has violated the PPO provider agreements.

## 3. Why is this lawsuit a class action?

In a class action, one or more people or entities called "class representatives" sue on behalf of themselves and other people with similar claims. All of these people together are the "class" or "class members." In this case, the Class Representatives are Chehalem Physical Therapy, Inc. and South Whidbey Physical Therapy and Sports Clinic. One court resolves the issues for all Class Members, except for those who exclude themselves from the Class.

## 4. Why is there a Settlement?

The Court has not decided in favor of the Plaintiffs or Coventry. Instead, both sides have agreed to a Settlement. By agreeing to settle, both sides avoid the cost and risk of a trial, and the Class Members affected will get a chance to receive compensation. The Class Representatives and their attorneys think the Settlement is best for all Class Members. The Settlement does not mean that Coventry did anything wrong.

## WHO IS PART OF THE SETTLEMENT?

If you received notice of the Settlement by a notice addressed to you, then you may be a Class Member. But even if you did not receive a notice, you may be a Class Member, as described below.

| 5.  How do I know if I am part of the Settlement? |
| --- |

The Settlement Class includes health care providers who:
- Have or had a First Health provider agreement;
- That agreement has an Appendix A that uses the term "maximum amount payable" in the language about reimbursement for services provided to occupationally ill or injured employees;
- Have had bills discounted under that provider agreement from March 25, 1999 to Month 00, 2014 by Coventry discounting the billed charge when that charge was less than the state or federal fee schedule amount.

| 6.  What if I am not sure whether I am included in the Settlement? |
| --- |

If you are not sure whether you are included in the Settlement, you may call 1-800-000-0000 with questions or visit www.CoventrySettlement.com.  You may also write with questions to Coventry First Health Settlement, P.O. Box 0000, City, ST 00000.

## THE SETTLEMENT BENEFITS

| 7.  What does the Settlement provide? |
| --- |

Coventry has agreed to pay up to $8.5 million to pay eligible Class Members as follows:

- $5 million will go into a "Guaranteed Fund" to pay everyone who received this Notice in the mail (*see* Question 9).
- $3.5 million will go into an "Individual Claim Fund" to pay actual damages of Class Members (*see* Question 10).

The cost to administer the Settlement as well as attorney fees and the payment to the Class Representatives will be paid separately by Coventry (*see* Question 19).

In addition to the monetary benefits, Coventry will change its business practices.  Coventry will:

- Instruct its workers' compensation payor clients to send to Coventry the maximum amount payable for the services indicated on the bill under applicable state or federal law for each provider bill for workers' compensation services they receive.  (Note: Under the settlement, Coventry has no obligation to audit or independently verify that its clients comply with this.)

- Begin a program to train and educate its provider service agents who are responsible for answering the Coventry toll-free telephone number included in the Explanations of Review ("EORs") sent to providers.  This training will include:

o  Information about the provider agreement language, new provider agreement amendments, payor client submission requirements, and the pricing.

o  Service agents will be shown specific pricing examples to ensure that they understand how the pricing works and that they are able to accurately explain it to providers.

o  Training that the workers' compensation allowable amount payors will be the maximum amount payable to the provider under applicable state or federal law.

More details are in a document called the Settlement Agreement, which is available at www.CoventrySettlement.com. Settlement benefits will begin after the Court grants final approval to the Settlement and any objections or appeals have been resolved.

## 8. How much will my payment be?

The Settlement Class is divided into three groups: (1) Notified Class Members, (2) Self-Identified Class Members, and (3) Actual Damages Class Members. The amount of your payment will be determined by the group(s) you are in. The two funds will be distributed as follows:

| FUND | ELIGIBLE SUB-CLASSES | PAYMENT AMOUNT | CLAIM FORM REQUIRED? |
|---|---|---|---|
| Guaranteed Fund | Notified Class Members | $50 | No |
| | Self-Identified Class Members | Proportional share of fund after all Notified Class Member claims are paid | Yes – with documentation |
| Individual Claim Fund | Actual Damages Class Members | Up to amount of actual damages | Yes – with documentation |

## 9. How will the Guaranteed Fund be distributed?

The Guaranteed Fund will be distributed to Notified Class Members and Self-Identified Class Members in a two-step process. First, payments will be made to all Notified Class Members. Then payment amounts will be calculated and made for all Self-Identified Class Members.

### Step 1: Payments to Notified Class Members

Every provider who receives this Notice in the mail and does not opt out of the Settlement Class is a Notified Class Member and will receive $50 without doing anything or submitting a claim. The amount of the Guaranteed Fund that is available for these payments will be capped at $3 million (60,000 claims). If the number of claims is greater than the money available, the payment amount will be reduced proportionally to ensure that all Notified Class Members receive a payment. The payment you receive as a Notified Class Member will include Claim Forms and detailed instructions on how to file a claim as a Self-Identified Class Member or an Actual Damages Class Member along with information about the claim filing deadlines.

### Step 2: Payments to Self-Identified Class Members

Notified Class Members may also choose to file a claim as a Self-Identified Class Member to receive an additional payment from the Guaranteed Fund. If you submit a valid claim as a Self-Identified Class Member, and the Claims Administrator approves your claim, you will receive a proportional share of the

remaining money in the Guaranteed Fund ($2 million).  The amount of the payment you receive will depend upon how many providers submit valid claims as Self-Identified Class Members.  To file a claim as a Self-Identified Class Member you will need to provide supporting documentation including copies of sections of your First Health PPO provider agreement and applicable appendix.  You will be mailed a Claim Form when they become available.

## 10.  How will the Individual Claim Fund be distributed?

**Payments to Actual Damages Class Members**

In addition to receiving payment(s) out of the Guaranteed Fund, you may choose to submit a claim as an Actual Damages Class Member to receive a payment from the Individual Claim Fund.  In order to get an Actual Damage payment, you must prove that you have had bills discounted under your First Health provider agreement from March 25, 1999 to Month 00, 2014.  Coventry must have discounted the billed charge when the charge was less than the state or federal fee schedule amount.

To receive a payment from the Individual Claim Fund you must submit a valid Claim Form with all supporting documentation including copies of sections of your First Health PPO provider agreement and the applicable appendix and fee schedule.  You will be mailed a Claim Form when they become available. You can only qualify for a payment from the Individual Claim Fund if the amount of your Individual Claim is greater than the amount that you are entitled to receive from the Guaranteed Fund.  Individual Claim Payments will be paid first out of the Guaranteed Fund and then the remainder of the claim will be paid out of the Individual Claim Fund.

- *For example:* If the Individual Claim amount is $4,000 and the provider is eligible to receive $2,500 from the Guaranteed Fund, then the approved Individual Claim Payment will be - $2,500 from the Guaranteed Fund and $1,500 from the Individual Claim Fund.

If the total of all approved Individual Claim Payments (after payments are made from the Guaranteed Fund) is greater than $3.5 million then all payments out of the Individual Claim Fund will be reduced proportionally to ensure that all eligible Actual Damages Class Members receive a payment.

## 11.  When will I receive my payment?

No payments, either from the Guaranteed Fund or the Individual Claim Fund, will be made until after the Court grants final approval to the Settlement and after any appeals are resolved (*see* "The Fairness Hearing" below).  If there are appeals, resolving them can take time.  Please be patient.

## 12.  What am I giving up to stay in the Settlement Class?

If the Settlement becomes final, you will give up your right to sue Coventry for the claims being resolved by this Settlement.  The specific claims you are giving up against Coventry are described in Section X of the Settlement Agreement.  You will be "releasing" Coventry and all related people as described in Section 12 of the Settlement Agreement.  The Settlement Agreement is available at www.CoventrySettlement.com.

The Settlement Agreement describes the released claims with specific descriptions, so read it carefully.

If you have any questions you can talk to the law firms listed in Question 18 for free or you can, of course, talk to your own lawyer if you have questions about what this means.

## 13.  How will discounts to providers' bills be handled in the future?

This lawsuit claimed that it is incorrect for Coventry to discount a provider's billed charge for a service when the billed charge is less than the applicable state or federal fee schedule amount and the provider has certain "maximum amount payable" language in the workers' compensation reimbursement language of its PPO provider agreement.

However, Coventry's instruction to workers' compensation payors (*see* Question 7) **will** result in a discount off your billed charge if the:

1.  Billed charge is less than the maximum payable under the applicable state or federal workers' compensation fee schedule; and
2.  Reimbursement is calculated based on the workers' compensation reimbursement language of your provider agreement if it provides for payment of a percentage of the "maximum amount payable" under applicable laws, rules, regulations, or guidelines.

If you do not want these discounts, you may cancel the workers' compensation portion of your PPO provider agreement by sending a termination notice, by United States mail, postmarked no later than Month 00, 2014 (30 days after the date of this Notice) to:

Coventry First Health
P.O. Box 0000
City, ST 00000

Cancellation of the workers' compensation portion of your PPO provider agreement will be effective 60 days after Coventry receives the termination notice.

# HOW TO RECEIVE A PAYMENT

## 14.  How can I receive a payment?

If you received this notice in the mail you will receive a payment as a Notified Class Member automatically once the Settlement is approved and all appeals are resolved.

To ask for a payment as a Self-Identified Class Member and/or an Actual Damages Class Member, simply complete and submit the appropriate Claim Form.  You will receive these Claim Forms and instructions with your Notified Class Member Payment.  If you do not receive these Claim Forms in the mail, they will be available at www.CoventrySettlement.com or by calling 1-800-000-0000.  You may also write to:

Coventry First Health Settlement
P.O. Box 0000
City, ST 00000

The deadlines for filing a claim have not yet been set.

**QUESTIONS?  CALL 1-800-000-0000 OR VISIT WWW.COVENTRYSETTLEMENT.COM**

Exhibit 2
Page 7 of 11

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you don't want a payment/benefits from this Settlement, and you want to keep the right to sue Coventry about the issues in this case, then you must take steps to get out of the Settlement.  This is called excluding yourself—or it is sometimes referred to as "opting out" of the Settlement Class.

### 15.  How do I get out of the Settlement?

To exclude yourself, send a letter that says you want to be excluded from the Settlement in *Chehalem Physical Therapy, Inc. v. Coventry Health Care, Inc*., Case No. 3:09-CV-320-HU.  Include the name, address and phone number of the provider wanted to opt out, and a statement that the provider is a member of the Settlement Class.  You must mail your Exclusion Request postmarked by **Month 00, 2014**, to:

Coventry First Health Settlement
P.O. Box 0000
City, ST 00000

### 16.  If I do not exclude myself, can I sue Coventry for the same thing later?

No.  Unless you exclude yourself, you give up the right to sue Coventry for the claims that this Settlement resolves.

### 17.  If I exclude myself, can I still get a payment?

No.  You will not get a payment if you exclude yourself from the Settlement Class.

## THE LAWYERS REPRESENTING YOU

### 18.  Do I have a lawyer in the case?

Yes. The Court has appointed a number of lawyers to represent all Class Members as "Settlement Class Counsel."  They include:

| | | |
|---|---|---|
| **Steve D. Larson**<br>Email: slarson@stollberne.com<br>**Joshua L. Ross**<br>Email: jross@stollberne.com<br>Stoll Stoll Berne Lokting &<br>Shlachter P.C.<br>209 S.W. Oak Street, Suite 500<br>Portland, Oregon 97204<br>Telephone: (503) 227-1600<br>Facsimile: (503) 227-6840 | **Diana E. Godwin**<br>Email:<br>DianaGodwin@earthlink.net<br>Law Offices of Diana E. Godwin<br>1500 NE Irving Street Suite 430<br>Portland, Oregon 97232<br>Telephone: (503) 224-0091<br>Facsimile: (503) 229-0614 | **Thomas A. Filo**<br>Email: tomfilo@yahoo.com<br>Cox Cox Filo Camel & Wilson,<br>LLC<br>723 Broad Street<br>Lake Charles, Louisiana 70601<br>Telephone: (337) 436-6611<br>Facsimile: (337) 436-9541 |

QUESTIONS?  CALL 1-800-000-0000 OR VISIT WWW.COVENTRYSETTLEMENT.COM

Exhibit 2
Page 8 of 11

| | | |
|---|---|---|
| **Stephen B. Murray**<br>Email: smurray@murray-lawfirm.com<br>**Arthur M. Murray**<br>Email: amurray@murray-lawfirm.com<br>**Korey A. Nelson**<br>Email: knelson@murray-lawfirm.com<br>**Stephen B. Murray, Jr.**<br>Email: smurrayjr@murray-lawfirm.com<br>Murray Law Firm<br>650 Poydras Street, Suite 1100<br>New Orleans, Louisiana 70130<br>Telephone: (504) 525-8100<br>Facsimile:  (504) 584-5249 | **Joseph Payne Williams, Sr.**<br>Email: jpwpw@cp-tel.net<br>**Richard Bray Williams**<br>Email: bray@cp-tel.net<br>Williams Family Law Firm, LLC<br>162 Jefferson Street<br>Natchitoches, Louisiana 71457<br>Telephone:  (318) 352-6695<br>Facsimile:  (318) 352-6696 | |

You will not be charged for contacting these lawyers.  If you want to be represented by your own lawyer, you may hire one at your own expense.

## 19.  How will the lawyers be paid?

Settlement Class Counsel will ask the Court for attorneys' fees and expenses of up to $2.6 million.  The fees and expenses awarded by the Court will be paid separately by Coventry.  The Court will decide the amount of fees to award.  Settlement Class Counsel will also request that special service payments of $10,000 each be paid to the Class Representatives for their service as representatives on behalf of the whole Settlement Class.

# OBJECTING TO THE SETTLEMENT

## 20.  How do I tell the Court if I do not like the Settlement?

If you are a member of the Settlement Class, you can object to any part of the Settlement, the Settlement as a whole, Settlement Class Counsel's requests for fees and expenses, and/or the special service payments to the Class Representatives.  To object, you must submit a letter that includes the following:

- The provider's name, title, address, and telephone number;
- A statement of the objector's intent to appear, either in person or through an attorney (if applicable) along with the name, address, and telephone number of the attorney;
- A statement that you are a member of the Settlement Class in *Chehalem Physical Therapy, Inc. v. Coventry Health Care, Inc.*, Case No. 3:09-CV-320-HU;
- The reasons you object to the Settlement, along with any supporting materials, exhibits, affidavits, and/or witnesses you plan to introduce;
- Your signature (or your attorney's signature).

**QUESTIONS?  CALL 1-800-000-0000 OR VISIT WWW.COVENTRYSETTLEMENT.COM**

Exhibit 2
Page 9 of 11

The requirements to object to the Settlement are described in detail in the Settlement Agreement in section 17.  You must mail your objection to <u>each</u> of the following three addresses, and your objection must be postmarked by **Month 00, 2014**:

| COURT | CLASS COUNSEL | DEFENSE COUNSEL |
|---|---|---|
| Clerk of the Court<br>Mark O. Hatfield United States Courthouse<br>1000 S.W. Third Ave.<br>Portland, OR 97204 | Steve D. Larson<br>Joshua L. Ross<br>Stoll Stoll Berne Lokting & Shlachter P.C.<br>209 S.W. Oak Street, Suite 500<br>Portland, Oregon 97204 | V. Robert Denham, Jr.<br>Jennifer A. Adler,<br>Robins, Kaplan, Miller & Ciresi L.L.P.<br>1201 West Peachtree Street<br>Suite 2200<br>Atlanta, Georgia 30309-3453 |

### 21.  What is the difference between objecting and asking to be excluded?

Objecting is simply telling the Court that you don't like something about the Settlement.  You can object only if you don't exclude yourself from the Class.  Excluding yourself is telling the Court that you don't want to be part of the Class.  If you exclude yourself, you have no basis to object because the case no longer affects you.

# THE FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the Settlement and any requests for fees and expenses.  You may attend and you may ask to speak, but you do not have to.

### 22.  When and where will the Court decide whether to approve the Settlement?

The Court will hold a Fairness Hearing at XX:00 x.m. on Month 00, 2014, at the Mark O. Hatfield United States Courthouse, 100 S.W. Third Ave., Portland, OR 97204.  The hearing may be moved to a different date or time without additional notice, so it is a good idea to check www.CoventrySettlement.com or call 1-800-000-0000.  At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate.  If there are objections, the Court will consider them and will listen to people who have asked to speak at the hearing.  The Court may also decide how much to pay Class Counsel.  After the hearing, the Court will decide whether to approve the Settlement.  We do not know how long these decisions will take.

### 23.  Do I have to attend the hearing?

No.  Class Counsel will answer questions the Court may have.  But, you or your own lawyer is welcome to attend at your expense.  If you send an objection, you do not have to come to Court to talk about it.  As long as you mailed your written objection on time, the Court will consider it.  You may also have your own lawyer attend, but it is not necessary.

### 24.  May I speak at the hearing?

You may ask the Court for permission to speak at the Fairness Hearing.  To do so, you must send a letter stating that it is your "Notice of Intention to Appear in *Chehalem Physical Therapy, Inc. v. Coventry Health Care, Inc*., Case No. 3:09-CV-320-HU."  Be sure to include the provider's name, title, address,

telephone number, and your signature along with whether you will be represented by an attorney and his/her name, address, and phone number (if applicable).  Your Notice of Intention to Appear must be postmarked no later than Month 00, 2014, and must be sent to the addresses listed in Question 20.

## GETTING MORE INFORMATION

| 23.  How do I get more information? |
|---|

This notice summarizes the proposed Settlement.  More details are in the Settlement Agreement.  You can get a copy of the Settlement Agreement at www.CoventrySettlement.com.  You also may write with questions to Coventry First Health Settlement, P.O. Box 0000, City, ST 00000 or call the toll-free number, 1-800-000-0000.  You can also get a Claim Form at the website, or by calling the toll free number, 1-800-000-0000.

Date

Contact Name
PPO Provider Name
Address
City, ST 00000

Dear XX:

Enclosed is your $50 Base Guaranteed Payment from the Coventry First Health Settlement. You may be eligible to file a claim for additional money.  Please read the enclosed Claim Forms and Instructions for more information about filing a claim.  The amount you receive will depend upon the total number of people who decide to participate.

**You must file your claim(s) by mail using the enclosed prepaid envelope by Month 00, 2014 to get your payment(s).**

If you have further questions:
- Visit www.CoventrySettlement.com;
- Call 1-800-000-0000
- Email Administrator@coventrysettlement.com

Sincerely,

COVENTRY FIRST HEALTH SETTLEMENT

**INSTRUCTIONS FOR CLAIM FORM FOR ADDITIONAL GUARANTEED PAYMENT**

You have received Notice of the Settlement in *Chehalem Physical Therapy, Inc. v. Coventry Health Care, Inc.,* Case No. 3:09-CV-320-HU along with a Base Guaranteed Payment. You may be eligible to receive an Additional Guaranteed Payment under this Settlement. More information about the lawsuit and claims process is in the Detailed Notice available at www.CoventrySettlement.com or by calling 1-800-000-0000.

If you believe you are eligible to receive an Additional Guaranteed Payment, you must mail the enclosed Claim Form along with all required documentation listed below to the Claims Administrator postmarked on or before **Month 00, 2014.** Please read and follow these instructions carefully.

1.    **INSTRUCTIONS.**

☐ Fill out the enclosed Claim Form completely and accurately. **If you cannot check both boxes on the Claim Form, you are not eligible to submit a claim as a Self-Identified Class Member.**
☐ Sign and date the Claim Form, under the penalty of perjury.
☐ Make at least two copies of each of the documents listed below.
☐ Mail a copy of the completed and signed Claim Form, along with one copy of each document listed below by First Class mail postmarked by **Month 00, 2014** to:

Coventry First Health Settlement
P.O. Box 0000
City, ST 00000

☐ Do not send any original documents to the Claims Administrator. The Claims Administrator will not return any documents to you.
☐ Keep a copy of all documents for your own records.

2.    **DOCUMENTATION (TO BE ENCLOSED WITH THE CLAIM FORM).**

☐ The first page of your PPO provider agreement showing that it is a First Health provider agreement;
☐ The signature page and any other appropriate pages of your PPO provider agreement showing that it was executed by you and First Health between April 1, 1998 and June 30, 2007; and
☐ The Appendix A to your PPO provider agreement showing that it uses the term "maximum amount payable" in the language relating to reimbursement for services provided to occupationally ill or injured employees.

Exhibit 3
Page 2 of 3

3.    **CLAIMS ADMINISTRATION PROCESS.**

All claims will be reviewed.  The Claims Administrator will determine whether you are a Self-identified Class Member eligible for an Additional Guaranteed Payment based <u>only</u> on the Claim Form and documents you submit.

Using the first page of your provider agreement, the Claims Administrator will verify that:
- ☐ The contracting party is First Health and that the agreement identifies you as the provider submitting the claim;
- ☐ Both you and First Health executed the provider agreement, and that your agreement was in effect at some point between April 1, 1998 and June 30, 2007; and
- ☐ The Appendix A to your provider agreement uses the term "maximum amount payable" in the language relating to reimbursement for services provided to occupationally ill or injured employees.

If your claim as a Self-identified Class Member is valid, your Additional Guaranteed Payment will be a proportional share of the money remaining in the Guaranteed Fund of $5,000,000 after all Base Guaranteed Payments are made.  The amount you receive will be calculated by dividing the amount of the remaining Guaranteed Fund by the number of Self-Identified Class Members with valid claims (as determined by the Claims Administrator).  You are <u>not</u> required to prove that you submitted bills with a billed charge for a service that was less than the state or federal fee schedule amount for that service to be eligible to receive an Additional Guaranteed Payment as a Self-identified Class Member.

4.    **IMPORTANT INFORMATION.**

Claim Forms that do not meet the requirements described in these instructions will be rejected. In addition, the Claims Administrator may reject your Claim Form for any of the following reasons:
- ☐ Failure to provide adequate documentation of your claim;
- ☐ Failure to fully complete and/or sign the Claim Form;
- ☐ Any information on the Claim Form or supporting documentation is false or inaccurate;
- ☐ Your Claim Form duplicates another Claim Form; or
- ☐ You are not a member of the Settlement Class.

The Claims Administrator will notify you if your claim is invalid, challenged, or rejected.  You must keep the Claims Administrator informed of your current mailing or email address.  If you do not, you may not receive payment.  If you have any questions about the claims process, please contact Class Counsel or the Claims Administrator.  Please do not contact the Court or Coventry's counsel with questions about the claims process.

Payments will be made after final approval of the Settlement by the Court and after any appeals are resolved.  This process may take time.  Please be patient.

<table>
<tr><td>

**Must Be
Postmarked
No Later Than
Date**

</td><td>

Coventry First Health Settlement Administrator
P.O. Box 0000
City, ST 00000

</td></tr>
</table>

## COVENTRY FIRST HEALTH SETTLEMENT CLAIM FORM

### ADDITIONAL GUARANTEED PAYMENT FOR SELF-IDENTIFIED CLASS MEMBERS

If you want to receive an Additional Guaranteed Payment under this Settlement you must provide the information requested below with the required documentation. Please print clearly in blue or black ink.

More information is available at the official Settlement website, www.CoventrySettlement.com, or by calling 1-800-000-0000. This Claim Form must be mailed and postmarked on or before **Month 00, 2014**.

1.    **CLASS MEMBER INFORMATION.**

_____
Name of Class Member as shown on PPO provider agreement

_____
Contact Person (if Class Member is not an individual)

_____
Street Address

_____    _____    _____
City                                                State              Zip Code

_____
Phone Number                                        Email Address

_____
Tax ID Number

2.    **CLAIM INFORMATION.**

Please read the statements below and check the boxes to confirm that the statements apply to you. **If you cannot check all boxes, do not submit this Claim Form because you are not eligible to submit a claim as a Self-Identified Class Member.**

☐ I am a health care provider who currently has or had a First Health PPO provider agreement with an effective date between April 1, 1998 and June 30, 20007.  The effective date of my provider agreement is/was _____.

☐ My First Health PPO provider agreement has an Appendix A that has the term "maximum amount payable" in the language for reimbursement for services provided to occupationally ill or injured employees.

☐ As instructed, I have included copies of:

1. The first page of my PPO provider agreement showing that it is a First Health provider agreement;
2. The signature page or other appropriate pages of my PPO provider agreement showing that it was executed by me and First Health between April 1, 1998 and June 30, 2007; and
3. The Appendix A to my PPO provider agreement showing that it uses the term "maximum amount payable" in the language relating to reimbursement for services provided to occupationally ill or injured employees.

**3.    SIGN AND DATE YOUR CLAIM FORM.**

I declare that the information in this Claim Form is true and correct to the best of my knowledge.

Signature: _____

Name (print): _____

Date: _____

**4.    MAIL YOUR CLAIM FORM.**

This Claim Form (and all supporting documentation) must be postmarked by **Month 00, 2014** and mailed to: Coventry First Health Settlement, P.O. Box 0000, City ST 00000.

Payments will be made after final approval of the Settlement by the Court and after any appeals are resolved.  This process may take time.  Please be patient.

<table>
<tr><td>

**Must Be Postmarked No Later Than Date**

</td><td>

Coventry First Health Settlement Administrator
P.O. Box 0000
City, ST 00000

</td></tr>
</table>

## COVENTRY FIRST HEALTH SETTLEMENT CLAIM FORM

### INDIVIDUAL CLAIM PAYMENT FOR ACTUAL DAMAGES CLASS MEMBERS

If you want to receive an Individual Claim Payment under this Settlement, you must provide the information requested below with the required documentation.  Please print clearly in blue or black ink.

More information is available at the official Settlement website, www.CoventrySettlement.com, or by calling 1-800-000-0000.  This Claim Form must be mailed and postmarked on or before **Month 00, 2014**.

**1.     CLASS MEMBER INFORMATION.**

_____
Name of Class Member as shown on PPO provider agreement

_____
Contact Person (if Class Member is not an individual)

_____
Street Address

_____        _____        _____
City                                          State                 Zip Code

_____
Phone Number                                           Email Address

_____
Tax ID Number

**2.     CLAIM INFORMATION.**

Please read the statements below and check the boxes to confirm that the statements apply to you.  **If you cannot check all boxes, do not submit this Claim Form because you are not eligible to submit a claim as an Actual Damages Class Member.**

☐   I am a health care provider and who currently has or had a First Health PPO provider agreement with an effective date between April 1, 1998 and June 30, 20007.

The effective date of my provider agreement is/was _____.

The termination date of my provider agreement is/was _____.

☐ My First Health PPO provider agreement has an Appendix A that has the term "maximum amount payable" in the language for reimbursement for services provided to occupationally ill or injured employees.

☐ I submitted at least one bill to First Health for reimbursement under my PPO provider agreement for services provided to a workers' compensation patient between March 25, 1999 and the present.

☐ For at least one of these bills, my billed charge was less than the applicable state or federal fee schedule for that service, and First Health applied a discount to my billed charge.

☐ As instructed, I have submitted copies of:

1. The first page of my PPO provider agreement showing that it is a First Health provider agreement;

2. The signature page or other appropriate pages of my PPO provider agreement showing that it was executed by me and First Health between April 1, 1998 and June 30, 2007;

3. The Appendix A to my PPO provider agreement showing that it uses the term "maximum amount payable" in the language relating to reimbursement for services provided to occupationally ill or injured employees;

4. A copy of each Explanation of Review ("EOR") for each eligible procedure or service submitted to First Health for reimbursement under my PPO provider agreement between March 25, 1999 and Month 00, 2014, where: a) the billed charge was less than the applicable state or federal fee schedule for that service and b) First Health applied a discount to the billed charge; and

5. A copy of the applicable state or federal fee schedule amount in effect on the date of service for each eligible procedure or service or a copy of the applicable state rule or regulation determining provider reimbursement, along with any accompanying values.

**3.     SIGN AND DATE YOUR CLAIM FORM.**

I declare that the information in this Claim Form, and all supporting documentation submitted with this Claim Form, is true and correct to the best of my knowledge.

Signature: _____

Name (print): _____

Date: _____

**4.    MAIL YOUR CLAIM FORM.**

This Claim Form (and all supporting documentation) must be postmarked by **Month 00, 2014** and mailed to: Coventry First Health Settlement, P.O. Box 0000, City ST 00000.

Payments will be made after final approval of the Settlement by the Court and after any appeals are resolved.  This process may take time.  Please be patient.

Exhibit 5
Page 3 of 3

**COVENTRY FIRST HEALTH SETTLEMENT**

**INSTRUCTIONS FOR CLAIM FORM FOR INDIVIDUAL CLAIM PAYMENT**

You have received Notice of the settlement in *Chehalem Physical Therapy, Inc. v. Coventry Health Care, Inc.,* Case No. 3:09-CV-320-HU along with a Base Guaranteed Payment. You may be eligible to receive an Individual Claim Payment under this Settlement as an Actual Damages Class Member. More information about the lawsuit and claims process is in the Detailed Notice available at www.CoventrySettlement.com or by calling 1-800-000-0000.

If you believe you are eligible to receive an Individual Claim Payment, you must mail the enclosed Claim Form, along with all required documentation listed below, to the Claims Administrator postmarked on or before **Month 00, 2014**. Please read and follow these instructions carefully.

1. **INSTRUCTIONS.**

    ☐ Fill out the enclosed Claim Form completely and accurately. **If you cannot check all boxes on the Claim Form, you are not eligible to submit a claim as an Actual Damages Class Member.**
    ☐ Sign and date the Claim Form, under penalty of perjury.
    ☐ Make at least two copies of each of the documents listed below.
    ☐ Mail a copy of the completed and signed Claim Form, along with one copy of each document listed below by First Class mail postmarked by **Month 00, 2014** to:

    Coventry First Health Settlement
    P.O. Box 0000
    City, ST 00000

    ☐ Do not send any original documents to the Claims Administrator. The Claims Administrator will not return any documents to you.
    ☐ Keep a copy of all documents for your own records.

2. **DOCUMENTATION (TO BE ENCLOSED WITH THE CLAIM FORM).**

    ☐ The first page of your PPO provider agreement showing that it is a First Health provider agreement;
    ☐ The signature page and any other appropriate pages of your PPO provider agreement showing that it was executed by you and First Health between April 1, 1998 and June 30, 2007;
    ☐ The Appendix A to your PPO provider agreement showing that it uses the term "maximum amount payable" in the language relating to reimbursement for services provided to occupationally ill or injured employees;
    ☐ A copy of each Explanation of Review ("EOR") for each procedure or service submitted to First Health for reimbursement under your PPO provider agreement between March 25, 1999 and the present, where: 1) your billed charge was less than the applicable state

or federal fee schedule for that service and 2) First Health applied a discount to your billed charge; and

☐ A copy of the applicable state or federal fee schedule amount in effect on the date of service for each procedure or service described above or a copy of the applicable state rule or regulation determining provider reimbursement, along with any accompanying values.

**3.    CLAIMS ADMINISTRATION PROCEDURE.**

All claims will be reviewed.  The Claims Administrator will determine whether you are an Actual Damages Class Member eligible for an Individual Claim Payment based <u>only</u> on the Claim Form and documents you submit.  However, the Claims Administrator may verify all or part of your claim (including the fee schedule or any other values you submitted,) through an independent review of other sources of information.

You can only qualify for an Individual Claim Payment to the extent the your claim amount is greater than the amount that you are entitled to receive from the Guaranteed Fund, as described in the Detailed Notice and in Paragraph 7b of the Settlement Agreement available at www.CoventrySettlement.com.

Using the first page of your provider agreement the Claims Administrator will verify that:

☐ The contracting party is First Health and that the agreement identifies you as the provider submitting the claim.

☐ Both you and First Health executed the provider agreement, and that your agreement was in effect between April 1, 1998 and June 30, 2007.

☐ The Appendix A to your provider agreement uses the term "maximum amount payable" in the language relating to reimbursement for services provided to occupationally ill or injured employees.

The Claims Administrator will then calculate the amount of your Individual Claim Payment (if any) as follows:

1. Payment will be based only on bill lines for which your billed charge for the service was less than the applicable state or federal fee schedule amount for that service.  Bill lines in bills that were not paid on a bill line basis (such as those that have a capped amount, multiple reductions, maximum number of services, etc.) are not eligible for additional payment.

2. The percentage of "maximum amount payable" specified in the workers' compensation reimbursement language in your Appendix A will be applied to the billed charge for each eligible bill line.

   o If the percentage applied to the billed charge <u>does not</u> equal the reimbursement amount on the EOR, the bill line is not eligible for additional payment because reimbursement would not have been calculated based upon the contract percentage applied to the billed charge.

        o     If the percentage applied to the billed charge <u>does</u> equal the reimbursement amount on the EOR, the remaining steps will determine if the bill line is eligible for additional payment.

3.    The percentage of "maximum amount payable" specified in the workers' compensation reimbursement language in your Appendix A will be applied to the state or federal fee schedule amount for the service on each remaining eligible bill line.

4.    You will be eligible to receive the difference between (a) the lesser of the amount calculated in Step 3 and the billed charge; and (b) the reimbursement amount for the bill line indicated on the EOR.

5.    Your Individual Claim Payment will be the total of the amounts calculated using this process for all eligible bill lines, minus the amount payable to you from the Guaranteed Fund, as explained in the Detailed Notice you received.

**4.    IMPORTANT INFORMATION.**

Claim Forms that do not meet the requirements described in these instructions will be rejected. In addition, the Claims Administrator may reject your Claim Form for any of the following reasons:

☐ Failure to provide adequate documentation of your claim;

☐ Failure to fully complete and/or sign the Claim Form;

☐ Any information on the Claim Form or supporting documentation is false or inaccurate;

☐ Your Claim Form duplicates another Claim Form;

☐ You are not a member of the Settlement Class; or

☐ The amount of your Individual Claim Payment is less than the amount that you are entitled to receive from the Guaranteed Fund, as described in the Detailed Notice and in Paragraph 7b of the Settlement Agreement.

The Claims Administrator will notify you if your claim is invalid, challenged, or rejected. You must keep the Claims Administrator informed of your current mailing or email address. If you do not, you may not receive payment. If you have any questions about the claims process, please contact Class Counsel or the Claims Administrator. Please do not contact the Court or Coventry's counsel with questions about the claims process.

Payments will be made after final approval of the Settlement by the Court and after any appeals are resolved. This process may take time. Please be patient.

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
AT PORTLAND

| | |
|---|---|
| **CHEHALEM PHYSICAL THERAPY, INC., and SOUTH WHIDBEY PHYSICAL THERAPY AND SPORTS CLINIC,**<br><br>        **PLAINTIFFS**,<br><br>    v.<br><br>**COVENTRY HEALTH CARE, INC.,**<br><br>        **DEFENDANT**. | Case No. 3:09-CV-320-HU<br><br>**PROPOSED ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |

HUBEL, Magistrate Judge:

This matter is before the court on motion of the plaintiffs Chehalem Physical Therapy, Inc. ("Chehalem") and South Whidbey Physical Therapy and Sports Clinic ("South Whidbey"), and defendant Coventry Health Care, Inc. ("Coventry") to preliminarily approve the settlement reflected in the Settlement Agreement entered into by plaintiffs and defendant, and submitted to the Court. The motion is fully briefed, and the Court heard oral argument on the motion on March 20, 2014.  The Court, having reviewed and considered the Settlement Agreement, the Preliminary Approval Motion, and all memoranda, declarations, exhibits, and arguments of counsel presented in support of said motion, and good cause appearing therefor;

THE COURT HEREBY ORDERS AS FOLLOWS:

1.    The Settlement is preliminarily approved as being within the range of a fair, reasonable and adequate class action settlement.

2.    The Court hereby conditionally certifies, for settlement purposes only, pursuant to Fed. R. Civ. P. 23(b)(3) the following class:

All health care providers who have or have had a First Health provider agreement, whose provider agreements have an Appendix A that has the term "maximum amount payable" in the reimbursement provision for reimbursement for services rendered to occupationally ill or injured employees, and who have had bills discounted pursuant to the First Health provider agreement during the class period, March 25, 1999 through the present, by discounting the billed charge when the billed charge was less than the applicable state or federal fee schedule amount.

3.    The Court appoints plaintiffs Chehalem Physical Therapy, Inc. and South Whidbey Physical Therapy and Sports Clinic as representatives for the Settlement Class;

4.    The Court appoints Class Counsel for the Settlement Class as follows: Steve D. Larson of Stoll Stoll Berne Lokting & Shlachter P.C. as Lead Counsel; Joshua L. Ross of Stoll Stoll Berne Lokting & Shlachter P.C. as Liaison Counsel; and Stoll Stoll Berne Lokting & Shlachter P.C.; Law Offices of Diana E. Godwin; Cox Cox Filo Camel & Wilson, LLC; the Murray Law Firm; and the Williams Family Law Firm, LLC, as class counsel, and finds that Class Counsel will fairly and adequately represent the interests of the Settlement Class;

5.    The Court finds that the methodology and manner of identifying Settlement Class members (Exhibit 1) and providing notice will reasonably and adequately advise the members of the Settlement Class of their rights and obligations under the Settlement Agreement, and is the most practicable method under the circumstances;

6.    The Court approves, as to form and content (or as may be amended by the Court) the Class Notice, Claim Forms and Instructions attached to the Settlement Agreement as Exhibits 2-5. The Court finds that the dissemination of the Class Notice, as set forth in the Settlement Agreement and directed by this Order,

constitutes the best notice practicable under the circumstances and provides sufficient notice to the members of the Settlement Class. The contents of the Notice and the manner of its dissemination satisfy the requirements of state and federal Due Process and the requirements of Fed. R. Civ. P. 23(c)(2)(B). The Court authorizes the parties to make minor revisions to the Notice as they may jointly deem necessary or appropriate without the necessity for further Court action or approval;

7. The court appoints the Rust Consulting Firm (the "Settlement Administrator") to administer the notice procedure, and to process and adjudicate the claims of the Settlement Class members, process payments to the Settlement Class members, and process opt-outs of Settlement Class members;

8. The Court orders that the Notice be sent, at Coventry's expense, by United States mail, to Settlement Class members that have been identified by Coventry in accordance with the methodology attached hereto as Exhibit 1. To the extent Notices are returned as undeliverable, the Settlement Administrator will undertake reasonable efforts to obtain current addresses for the Settlement Class members, including searching in the National Change of Address (NCOA) database, and/or Lexis Nexis.

9. A Fairness hearing shall be held by this Court to consider and finally determine:

    (a)    Whether the Settlement Agreement should be finally approved as fair, reasonable, and adequate;

    (b)    Whether the certification of the Class is appropriate;

(c)     Whether to approve Class Counsel's Motion for Attorneys' Fees and Costs, and for Service awards to the Class Representatives;

(d)     The approval of such opt out requests as have been properly and timely submitted in accordance with the Settlement Agreement;

(e)     The merits of any objections to the settlement properly and timely submitted by any members of the Settlement Class; and

(f)     Such other matters as may properly come before the Court in connection with the Fairness Hearing.

10.     The Court may adjourn or postpone the Fairness Hearing without further notice to members of the Class other than by announcement at the Fairness Hearing or any other public proceeding in this action.

11.     By the later of March 27, 2014, or seven (7) days after the entry of this Order, Coventry will supply the Settlement Administrator with a list of the names, last known addresses, last known telephone numbers, and last known email addresses of the Settlement Class Members identified by the methodology in Exhibit 1, to the extent such information  appears in the readily available computerized records of Coventry;

12.     Any members of the Settlement Class who do not request exclusion, and who object to the settlement in compliance with the requirements of the Settlement Agreement and the Notice, may appear at the final approval hearing in person or through counsel to show cause why the settlement should not be approved as fair, reasonable and adequate;

13.    Any member of the Settlement Class who desires exclusion therefrom must submit a request for exclusion in the manner, and by the date set forth in the Notice.  All Settlement Class members who properly and timely submit a request for exclusion shall have no rights with respect to the settlement;

14.    If the Settlement Agreement is finally approved, the Court shall enter an Order and Judgment finally approving the Agreement.  This Order shall be fully binding with respect to all members of the Settlement Class who did not request exclusion in the manner and by the date set forth in the Notice;

15.    All discovery, pretrial deadlines and other pretrial proceedings in this matter are stayed until further Order of the Court, except as otherwise agreed to by the parties or as may be necessary to implement the Settlement Agreement or this Order;

16.    In the event that the settlement provided in the Settlement Agreement is not finally approved by the Court, or entry of an Order and Judgment does not occur for any reason, the Settlement Agreement, and all drafts, negotiations, discussions, and documentation relating thereto, and all orders entered by the Court in connection with the settlement shall become null and void.  In such event, the Settlement Agreement and all negotiations and proceedings relating thereto shall be withdrawn without prejudice to the rights of any and all parties thereto, who shall be restored to their respective positions as of the date of the execution of the Settlement Agreement;

17.    Nothing in this Order shall be relied upon, cited as, constitute evidence of, or constitute an admission that class certification is or may be appropriate in any other action;

18.    The dates of performance of this Order are as follows:

(a)    The Notice shall be disseminated in accordance with the provisions of the Settlement Agreement, by the later of May 22, 2014 or 60 days after the entry of this Order;

(b)    Requests for exclusion must be received by the later of July 17, 2014 or 120 days after the entry of this Order;

(c)    Objections to the settlement must be postmarked by the later of July 17, 2014 or 120 days after the entry of this Order;

(d)    Class Counsel shall prepare and file a list of Settlement Class members who have filed timely requests for exclusion by the later of July 31, 2014, or 134 days after entry of this Order;

(e)    The parties shall jointly prepare and serve papers in support of final approval of the settlement, responding to any objections or motions to intervene, by the later of July 31, 2014, or 134 days after entry of this Order;

(f)    Class Counsel shall prepare and serve any motion for attorneys' fees and costs, or for service awards to the Class Representatives by the later of July 1, 2014, or 104 days after entry of this Order;

(g)    The final approval hearing shall be held on _____ at _____;

19. The Court retains jurisdiction to consider all further applications arising out of this settlement.


IT IS SO ORDERED

DATED: _____


_____
Hon. Dennis J. Hubel
United States Magistrate Judge